THUNDER BASIN COAL CO. *v.* REICH,
SECRETARY OF LABOR, ET AL.

No. 92–896.   Argued October 5, 1993—Decided January 19, 1994

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, O'CONNOR, KENNEDY, SOUTER, and GINSBURG, JJ., joined, and in which SCALIA and THOMAS, JJ., joined except for Parts III–B, IV, and V. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined, *post*, p. 219.

*Wayne S. Bishop* argued the cause for petitioner. With him on the briefs were *Charles W. Newcom, Stewart A. Block*, and *Thomas F. Linn.*

*Deputy Solicitor General Wallace* argued the cause for respondents. On the brief were *Solicitor General Days, Acting Deputy Solicitor General Kneedler, William K. Kelley, Allen H. Feldman,* and *Nathaniel I. Spiller.**

JUSTICE BLACKMUN delivered the opinion of the Court.

In this case, we address the question whether the statutory-review scheme in the Federal Mine Safety and Health Amendments Act of 1977, 91 Stat. 1290, as amended, 30 U. S. C. § 801 *et seq.* (1988 ed. and Supp. IV) (Mine Act or Act), prevents a district court from exercising subject-matter jurisdiction over a pre-enforcement challenge to the Act. We hold that it does.

I

Congress adopted the Mine Act "to protect the health and safety of the Nation's coal or other miners." 30 U. S. C. § 801(g). The Act requires the Secretary of Labor or his representative to conduct periodic, unannounced health and

---

*\*Timothy M. Biddle* and *J. Michael Klise* filed a brief for the American Mining Congress et al. as *amici curiae* urging reversal.

*Patrick K. Nakamura, George N. Davies, Robert H. Stropp, Jr.,* and *Mary Lu Jordan* filed a brief for the International Union, United Mine Workers of America, as *amicus curiae* urging affirmance.

safety inspections of the Nation's mines.[1]   Section §813(f)
provides:

> "[A] representative of the operator and a representative
> authorized by his miners shall be given an opportunity
> to accompany the Secretary or his authorized repre-
> sentative during the physical inspection of any coal or
> other mine . . . for the purpose of aiding such inspection
> and to participate in pre- or post-inspection conferences
> held at the mine."

Regulations promulgated under this section define a min-
ers' representative as "[a]ny person or organization which
represents two or more miners at a coal or other mine for
the purposes of the Act."   30 CFR §40.1(b)(1) (1993).

In addition to exercising these "walk-around" inspection
rights under §813(f), persons designated as representatives
of the miners may obtain certain health and safety informa-
tion[2] and promote health and safety enforcement.[3]   Once the
mine employees designate one or more persons as their rep-

---

[1] Underground mines must be inspected at least four times a year, and
surface mines must be inspected at least twice annually.   30 U. S. C.
§813(a).

[2] Miners' representatives are entitled to receive "a copy of any order,
citation, notice, or decision" issued by the Secretary to the mine operator,
30 U. S. C. §819(b), as well as copies of certain mine health and safety
records available to the Secretary regarding employee exposure to toxic
or other harmful agents, §813(c), daily mine inspections, 30 CFR §77.1713,
and plans for mine evacuation, §77.1101, roof control, §75.220, and em-
ployee training, §§48.3 and 48.23.

[3] Miners' representatives, among other things, may inform the Secretary
of mine hazards, 30 U. S. C. §813(g)(2), request immediate additional in-
spections of the mine when a violation or imminent danger exists,
§813(g)(1), and participate in proceedings before the Federal Mine Safety
and Health Review Commission, §815(d).   Representatives may request
or challenge certain enforcement actions against a mine operator, §§815(d)
and 817(e)(1), contest the time an operator is given to abate a Mine Act
violation, §815(d), and initiate proceedings to modify the application of
health and safety standards, 30 CFR §44.3.

resentatives, the employer must post at the mine information regarding these designees. 30 CFR § 40.4.

The Secretary has broad authority to compel immediate compliance with Mine Act provisions through the use of mandatory civil penalties, discretionary daily civil penalties, and other sanctions.[4] Challenges to enforcement are reviewed by the Federal Mine Safety and Health Review Commission, 30 U. S. C. §§ 815 and 823, which is independent of the Department of Labor, and by the appropriate United States court of appeals, § 816.

## II

Petitioner Thunder Basin Coal Company operates a surface coal mine in Wyoming with approximately 500 nonunion employees. In 1990, petitioner's employees selected two employees of the United Mine Workers of America (UMWA), who were not employees of the mine, to serve as their miners' representatives pursuant to § 813(f). Petitioner did not post the information regarding the miners' representatives as required by 30 CFR § 40.4, but complained to the Mine Safety and Health Administration (MSHA)[5] that the designation compromised its rights under the National Labor Relations Act (NLRA). App. 31. The MSHA district manager responded with a letter instructing petitioner to post the miners' representative designations. *Id.*, at 49.

---

[4] The Secretary must issue a citation and recommend assessment of a civil penalty of up to $50,000 against any mine operator believed to have violated the Act. 30 U. S. C. §§ 814(a), 815(a), and 820(a). If an operator fails to abate the violation within the time allotted, the Secretary may assess additional daily civil penalties of up to $5,000 per day pending abatement. § 820(b). The Secretary's representative also may issue a "withdrawal order," directing all individuals to withdraw from the affected mine area, §§ 814(b) and (d), or pursue criminal penalties, § 820(d).

[5] The MSHA is established within the Department of Labor and represents the Secretary in enforcing the Mine Act. 91 Stat. 1319, 29 U. S. C. § 557a.

Rather than post the designations and before receiving the MSHA letter, petitioner filed suit in the United States District Court for the District of Wyoming for pre-enforcement injunctive relief. *Id.*, at 6. Petitioner contended that the designation of nonemployee UMWA "representatives" violated the principles of collective-bargaining representation under the NLRA as well as the company's NLRA rights to exclude union organizers from its property. *Id.*, at 9–10. Petitioner argued then, as it does here, that deprivation of these rights would harm the company irreparably by "giv-[ing] the union organizing advantages in terms of access, personal contact and knowledge that would not be available under the labor laws, as well as enhanced credibility flowing from the appearance of government imprimatur." Reply Brief for Petitioner 14.

Petitioner additionally alleged that requiring it to challenge the MSHA's interpretation of 30 U. S. C. § 813(f) and 30 CFR pt. 40 through the statutory-review process would violate the Due Process Clause of the Fifth Amendment, since the company would be forced to choose between violating the Act and incurring possible escalating daily penalties,[6] or, on the other hand, complying with the designations and suffering irreparable harm. The District Court enjoined respondents from enforcing 30 CFR pt. 40, finding that

---

[6] Petitioner relied for this proposition on a similar case in which a mine operator refused to post the designation of a UMWA employee, a citation was issued, and the MSHA ordered abatement within 24 hours and threatened to impose daily civil penalties. See *Kerr-McGee Coal Corp.* v. *Secretary,* 15 F. M. S. H. R. C. 352 (1993), appeal pending, No. 93–1250 (CADC). Kerr-McGee complied but contested the citation. An administrative law judge rejected the operator's claim, and the Commission affirmed, holding that § 813(f) did not violate the NLRA. 15 F. M. S. H. R. C., at 362–363. The Commission eventually fined Kerr-McGee a total of $300 for its noncompliance.

petitioner had raised serious questions going to the merits and that it might face irreparable harm.[7]

The Court of Appeals for the Tenth Circuit reversed, holding that the Mine Act's comprehensive enforcement and administrative-review scheme precluded district court jurisdiction over petitioner's claims. 969 F. 2d 970 (1992). The court stated:

> "[T]he gravamen of Thunder Basin's case is a dispute over an anticipated citation and penalty .... Operators may not avoid the Mine Act's administrative review process simply by filing in a district court before actually receiving an anticipated citation, order, or assessment of penalty." *Id.*, at 975.

To hold otherwise, the court reasoned, "would permit preemptive strikes that could seriously hamper effective enforcement of the Act, disrupting the review scheme Congress intended." *Ibid.* The court also concluded that the Mine Act's review procedures adequately protected petitioner's due process rights. *Ibid.*

We granted certiorari on the jurisdictional question, 507 U. S. 971 (1993), to resolve a claimed conflict with the Court of Appeals for the Sixth Circuit. See *Southern Ohio Coal Co.* v. *Donovan,* 774 F. 2d 693 (1985), amended, 781 F. 2d 57 (1986).

---

[7] App. to Pet. for Cert. A–24. Before the Court of Appeals ruled on the appeal from the preliminary injunction, the District Court held a trial and entered a permanent injunction in favor of petitioner. See *Thunder Basin Coal Co.* v. *Martin,* No. 91–CV–0050–B (D. Wyo., Mar. 13, 1992). The Court of Appeals subsequently denied petitioner's motion to stay appeal of the preliminary injunction and to consolidate the two cases, finding conclusive its holding that the District Court lacked jurisdiction. 969 F. 2d 970, 973, n. 3 (CA10 1992).

## III

In cases involving delayed judicial review[8] of final agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent is "fairly discernible in the statutory scheme." *Block* v. *Community Nutrition Institute,* 467 U. S. 340, 351 (1984), quoting *Association of Data Processing Service Organizations, Inc.* v. *Camp,* 397 U. S. 150, 157 (1970). Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, *Block,* 467 U. S., at 345, and whether the claims can be afforded meaningful review. See, *e. g., Board of Governors, FRS* v. *MCorp Financial, Inc.,* 502 U. S. 32 (1991); *Whitney Nat. Bank in Jefferson Parish* v. *Bank of New Orleans & Trust Co.,* 379 U. S. 411 (1965).

## A

Applying this analysis to the review scheme before us, we conclude that the Mine Act precludes district court jurisdiction over the pre-enforcement challenge made here. The Act establishes a detailed structure for reviewing violations of "any mandatory health or safety standard, rule, order, or regulation promulgated" under the Act. § 814(a). A mine operator has 30 days to challenge before the Commission any citation issued under the Act, after which time an uncontested order becomes "final" and "not subject to review by any court or agency." §§ 815(a) and (d). Timely challenges are heard before an administrative law judge (ALJ),

---

[8] Because court of appeals review is available, this case does not implicate " 'the strong presumption that Congress did not mean to prohibit all judicial review.' " *Bowen* v. *Michigan Academy of Family Physicians,* 476 U. S. 667, 672 (1986), quoting *Dunlop* v. *Bachowski,* 421 U. S. 560, 567 (1975).

§ 823(d)(1), with possible Commission review.[9] Only the Commission has authority actually to impose civil penalties proposed by the Secretary, § 820(i), and the Commission reviews all proposed civil penalties *de novo* according to six criteria.[10] The Commission may grant temporary relief pending review of most orders, § 815(b)(2), and must expedite review where necessary, § 815(d).

Mine operators may challenge adverse Commission decisions in the appropriate court of appeals, § 816(a)(1), whose jurisdiction "shall be exclusive and its judgment and decree shall be final" except for possible Supreme Court review, *ibid.* The court of appeals must uphold findings of the Commission that are substantially supported by the record, *ibid.*, but may grant temporary relief pending final determination of most proceedings, § 816(2).

Although the statute establishes that the Commission and the courts of appeals have exclusive jurisdiction over challenges to agency enforcement proceedings, the Act is facially silent with respect to pre-enforcement claims. The structure of the Mine Act, however, demonstrates that Congress intended to preclude challenges such as the present one. The Act's comprehensive review process does not distinguish between pre-enforcement and postenforcement challenges,

---

[9] 30 U. S. C. § 823(d)(2). The Commission exercises discretionary review over any case involving, among others, a "substantial question of law, policy or discretion," § 823(d)(2)(A)(ii)(IV), and may review on its own initiative any decision "contrary to law or Commission policy" or in which "a novel question of policy has been presented," § 823(d)(2)(B). Any ALJ decision not granted review by the Commission within 40 days becomes a "final decision of the Commission." § 823(d)(1).

[10] The statutory criteria are "the operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance." 30 U. S. C. § 820(i).

but applies to all violations of the Act and its regulations. § 814(a). Contrary to petitioner's suggestion, Reply Brief for Petitioner 3, actions before the Commission are initiated not by the Secretary but by a mine operator who claims to be aggrieved. See § 815(a). The Act expressly authorizes district court jurisdiction in only two provisions, §§ 818(a) and 820(j), which respectively empower the *Secretary* to enjoin habitual violations of health and safety standards and to coerce payment of civil penalties. Mine operators enjoy no corresponding right[11] but are to complain to the Commission and then to the court of appeals.

## B

The legislative history of the Mine Act confirms this interpretation. At the time of the Act's passage, at least 1 worker was killed and 66 miners were disabled every working day in the Nation's mines. See S. Rep. No. 95–181, p. 4 (1977), Legislative History of the Federal Mine Safety and Health Act of 1977 (Committee Print prepared for the Subcommittee on Labor of the Senate Committee on Human Resources), Ser. No. 95–2, p. 592 (1978) (Leg. Hist.). Frequent and tragic mining disasters testified to the ineffectiveness of

---

[11] Petitioner points to § 960, which provides that "no justice, judge, or court of the United States shall" enjoin enforcement of interim mandatory health and safety standards, and to § 815(a), which provides that citations not contested in a timely manner are "not subject to review by any court or agency," as evidence that Congress expressly prohibited federal jurisdiction when it so intended. Petitioner misconstrues § 960, which bars a certain form of relief but says nothing about the appropriate forum for a challenge. Section 815(a) similarly provides only that failure timely to challenge a citation precludes review before the Commission and court of appeals; it does not suggest that district court review is otherwise available. In light of the Act's other provisions granting district courts jurisdiction over challenges brought only by the Secretary, §§ 818(a) and 820(j), petitioner's argument based on the maxim *expressio unius est exclusio alterius* is unpersuasive.

then-existing enforcement measures.[12]    Under  existing  leg-
islation,[13]  civil  penalties  were  not  always  mandatory  and
were  too  low  to  compel  compliance,  and  enforcement  was
hobbled  by  a  cumbersome  review  process.[14]

Congress  expressed  particular  concern  that  under  the  pre-
vious  Coal  Act  mine  operators  could  contest  civil-penalty  as-
sessments  *de  novo*  in  federal  district  court  once  the  adminis-
trative  review  process  was  complete,  thereby  "seriously
hamper[ing]  the  collection  of  civil  penalties." [15]    Concluding

---

[12] In  February  1972,  for  example,  125  persons  were  killed  when  a  mine
dam  broke  at  Buffalo  Creek  in  West  Virginia.    Leg.  Hist.  592.    See  gener-
ally  G.  Stern,  The  Buffalo  Creek  Disaster  (1976).    Ninety-one  miners  died
of  carbon  monoxide  asphyxiation  in  May  1972  at  the  Sunshine  Silver  Mine
in  Idaho.    In  July  1972,  nine  miners  were  killed  in  a  mine  fire  in  Blacks-
ville,  W.  Va.,  and  in  March  1976,  23  miners  and  3  federal  inspectors  died
in  methane  gas  explosions  at  the  Scotia  coal  mine  in  Kentucky.    *Ibid.*

The  House  and  Senate  Committee  Reports  observed  that  these  acci-
dents  resulted  from  hazards  that  were  remediable  and  that  in  many  cases
already  had  been  the  object  of  repeated  enforcement  efforts.    See  gener-
ally  Leg.  Hist.  362,  371,  592–593,  637.    The  1972  Buffalo  Creek  disaster,
for  example,  occurred  after  the  mine  had  been  assessed  over  $1.5  million  in
penalties,  "not  one  cent  of  which  had  been  paid."    *Id.*,  at  631.    Sixty-two
ventilation  violations  were  noted  in  the  two  years  prior  to  the  Scotia  gas
explosions,  but  the  imposed  penalties  failed  to  coerce  compliance.    *Id.*,
at  629–630.

[13] The  1977  Mine  Act  renamed  and  amended  the  Federal  Coal  Mine
Health  and  Safety  Act  of  1969  (Coal  Act),  91  Stat.  1290,  and  repealed  the
Federal  Metal  and  Nonmetallic  Mine  Safety  Act  of  1966,  *id.*,  at  1322.

[14] The  Senate  Report  found  it  "unacceptable  that  years  after  enactment
of  these  mine  safety  laws  .  .  .  [m]ine  operators  still  find  it  cheaper  to  pay
minimal  civil  penalties  than  to  make  the  capital  investments  necessary  to
adequately  abate  unsafe  or  unhealthy  conditions,  and  there  is  still  no
means  by  which  the  government  can  bring  habitual  and  chronic  violators
of  the  law  into  compliance."    Leg.  Hist.  592;  see  also  *id.*,  at  597.

[15] *Id.*,  at  633.    The  Senate  Report  explained:

"The  Committee  firmly  believes  that  to  effectively  induce  compliance,
the  penalty  must  be  paid  by  the  operator  in  reasonably  close  time  proxim-
ity  to  the  occurrence  of  the  underlying  violation.    A  number  of  problems
with  the  current  penalty  assessment  and  collection  system  interfere  with
this.    Final  determinations  of  penalties  are  not  self-enforcing,  and  opera-

that "rapid abatement of violations is essential for the protection of miners," Leg. Hist. 618, Congress accordingly made improved penalties and enforcement measures a primary goal of the Act.

The 1977 Mine Act thus strengthened and streamlined health and safety enforcement requirements. The Act authorized the Secretary to compel payment of penalties and to enjoin habitual health and safety violators in federal district court. See Leg. Hist. 627; 30 U. S. C. §§ 820(j) and 818(a). Assessment of civil penalties was made mandatory for all mines, and Congress expressly eliminated the power of a mine operator to challenge a final penalty assessment *de novo* in district court. Cf. *Whitney Nat. Bank,* 379 U. S., at 420 (that "Congress rejected a proposal for a *de novo* review in the district courts of Board decisions" supports a finding of district court preclusion).[16] We consider the legislative history and these amendments to be persuasive evidence that Congress intended to direct ordinary challenges under the Mine Act to a single review process.

---

tors have the right to seek judicial review of penalty determinations, and may request a de novo trial on the issues in the U. S. District Courts. This encourages operators who are not pre-disposed to voluntarily pay assessed penalties to pursue cases through the elaborate administrative procedure and then to seek redress in the Courts. Since the District Courts are still reluctant to schedule trials on these cases, and the Department of Justice has been reluctant to pursue such cases in the courts, the matters generally languish at that stage, and the penalties go uncollected." *Id.,* at 604.

[16] The Senate Report's citation, see Leg. Hist. 602, of *Bituminous Coal Operators' Assn.* v. *Secretary of Interior,* 547 F. 2d 240 (CA4 1977) (holding that pre-enforcement district court challenges were not precluded under the 1969 Coal Act), does not support petitioner's claim that Congress intended to preserve district court jurisdiction over pre-enforcement suits. That case was cited for an unrelated proposition and does not constitute a "settled judicial construction" that Congress presumptively preserved. *United States* v. *Powell,* 379 U. S. 48, 55, n. 13 (1964); see also *Keene Corp.* v. *United States,* 508 U. S. 200, 207–209 (1993).

*Abbott Laboratories* v. *Gardner*, 387 U. S. 136 (1967), is not to the contrary. In that case, this Court held that statutory review of certain provisions of the Federal Food, Drug, and Cosmetic Act, 52 Stat. 1040, as amended by the Drug Amendments of 1962, 76 Stat. 780, 21 U. S. C. § 301 *et seq.*, did not preclude district court jurisdiction over a pre-enforcement challenge to regulations promulgated under separate provisions of that Act. In so holding, the Court found that the presence of a statutory saving clause, see 387 U. S., at 144, and the statute's legislative history demonstrated "rather conclusively that the specific review provisions were designed to give an additional remedy and not to cut down more traditional channels of review," *id.*, at 142. It concluded that Congress' primary concern in adopting the administrative-review procedures was to supplement review of specific agency determinations over which traditional forms of review might be inadequate. *Id.*, at 142–144. Contrary to petitioner's contentions, no comparable statutory language or legislative intent is present here. Indeed, as discussed above, the Mine Act's text and legislative history suggest precisely the opposite. The prospect that federal jurisdiction might thwart effective enforcement of the statute also was less immediate in *Abbott Laboratories*, since the *Abbott* petitioners did not attempt to stay enforcement of the challenged regulation pending judicial review, as petitioner did here. *Id.*, at 155–156.

## C

We turn to the question whether petitioner's claims are of the type Congress intended to be reviewed within this statutory structure. This Court previously has upheld district court jurisdiction over claims considered "wholly 'collateral'" to a statute's review provisions and outside the agency's expertise, *Heckler* v. *Ringer*, 466 U. S. 602, 618 (1984), discussing *Mathews* v. *Eldridge*, 424 U. S. 319 (1976), particularly where a finding of preclusion could foreclose all meaningful

judicial review. See *Traynor* v. *Turnage,* 485 U. S. 535, 544–545 (1988) (statutory prohibition of all judicial review of Veterans Administration benefits determinations did not preclude jurisdiction over an otherwise unreviewable collateral statutory claim); *Bowen* v. *Michigan Academy of Family Physicians,* 476 U. S. 667, 678–680 (1986); *Johnson* v. *Robison,* 415 U. S. 361, 373–374 (1974); *Oestereich* v. *Selective Serv. System Local Bd. No. 11,* 393 U. S. 233, 237–238 (1968); *Leedom* v. *Kyne,* 358 U. S. 184, 190 (1958) (upholding injunction of agency action where petitioners had "no other means, within their control . . . to protect and enforce that right"). In *Mathews* v. *Eldridge,* for example, it was held that 42 U. S. C. § 405(g), which requires exhaustion of administrative remedies before the denial of Social Security disability benefits may be challenged in district court, was not intended to bar federal jurisdiction over a due process challenge that was "entirely collateral" to the denial of benefits, 424 U. S., at 330, and where the petitioner had made a colorable showing that full postdeprivation relief could not be obtained, *id.,* at 331.

*McNary* v. *Haitian Refugee Center, Inc.,* 498 U. S. 479 (1991), similarly held that an alien could bring a due process challenge to Immigration and Naturalization Service amnesty determination procedures, despite an Immigration and Nationality Act provision expressly limiting judicial review of individual amnesty determinations to deportation or exclusion proceedings. See 8 U. S. C. § 1160(e). This Court held that the statutory language did not evidence an intent to preclude broad "pattern and practice" challenges to the program, 498 U. S., at 494, 497, and acknowledged that "if not allowed to pursue their claims in the District Court, respondents would not as a practical matter be able to obtain meaningful judicial review," *id.,* at 496.

An analogous situation is not presented here. Petitioner pressed two primary claims below: that the UMWA designation under § 813(f) violates the principles of collective bar-

gaining under the NLRA and petitioner's right "to exclude nonemployee union organizers from [its] property," *Lechmere, Inc.* v. *NLRB,* 502 U. S. 527, 532 (1992), and that adjudication of petitioner's claims through the statutory-review provisions will violate due process by depriving petitioner of meaningful review. Petitioner's statutory claims at root require interpretation of the parties' rights and duties under § 813(f) and 30 CFR pt. 40, and as such arise under the Mine Act and fall squarely within the Commission's expertise. The Commission, which was established as an independent-review body to "develop a uniform and comprehensive interpretation" of the Mine Act, Hearing on the Nomination of Members of the Federal Mine Safety and Health Review Commission before the Senate Committee on Human Resources, 95th Cong., 2d Sess., 1 (1978), has extensive experience interpreting the walk-around rights[17] and recently addressed the precise NLRA claims presented here.[18] Al-

---

[17] See *Cyprus Empire Corp.* v. *Secretary,* 15 F. M. S. H. R. C. 10 (1993) (striking workers' entitlement to walk-around representation); *Council of Southern Mountains, Inc.* v. *Martin County Coal Corp.,* 6 F. M. S. H. R. C. 206 (1984), aff'd *sub nom. Council of Southern Mountains, Inc.* v. *FMS–HRC,* 751 F. 2d 1418 (CADC 1985) (nonemployee miners' representative entitlement to monitor training courses at the mine); *Magma Copper Co.* v. *Secretary,* 1 F. M. S. H. R. C. 1948 (1979), aff'd in part, 645 F. 2d 694 (CA9 1981) (compensation for multiple miners' representatives).

[18] See *Kerr-McGee Coal Corp.* v. *Secretary,* 15 F. M. S. H. R. C. 352 (1993). The Commission concluded that there was "no basis" for limiting the designation of miners' representatives to "member[s] of a union that also represents the miners for collective bargaining purposes under the NLRA," *id.,* at 361, since the "discrete safety and health purpose of the Mine Act ... . render these NLRA principles inapplicable here," *id.,* at 362. The Commission noted that the preamble to 30 CFR pt. 40 expressly disapproves incorporation of the NLRA's majoritarian representation principles, 15 F. M. S. H. R. C., at 359, and n. 8, and rejected petitioner's property-rights claim, since *"Lechmere* does not reverse walkaround law as it has developed under the Mine Act." *Id.,* at 362. Cf. *Emery Mining Corp.* v. *Secretary,* 10 F. M. S. H. R. C. 276 (1988), aff'd in part and rev'd in part *sub nom. Utah Power & Light Co.* v. *Secretary of Labor,* 897 F. 2d

though the Commission has no particular expertise in construing statutes other than the Mine Act, we conclude that exclusive review before the Commission is appropriate since "agency expertise [could] be brought to bear on" the statutory questions presented here. *Whitney Nat. Bank,* 379 U. S., at 420.

As for petitioner's constitutional claim, we agree that "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies," *Johnson* v. *Robison,* 415 U. S., at 368, quoting *Oestereich* v. *Selective Serv. System Local Bd. No. 11,* 393 U. S., at 242 (Harlan, J., concurring in result); accord, *Califano* v. *Sanders,* 430 U. S. 99, 109 (1977). This rule is not mandatory, however, and is perhaps of less consequence where, as here, the reviewing body is not the agency itself but an independent Commission established exclusively to adjudicate Mine Act disputes. See *Secretary* v. *Richardson,* 3 F. M. S. H. R. C. 8, 18–20 (1981). The Commission has addressed constitutional questions in previous enforcement proceedings.[19] Even if this were not the case, however, petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals.[20]

447 (CA10 1990) (construing the Mine Act in light of the NLRA and concluding that a miners' representative may be a nonemployee).

[19] See *Secretary* v. *Jim Walter Resources, Inc.,* 9 F. M. S. H. R. C. 1305, 1306–1307 (1987), aff'd, 920 F. 2d 738 (CA11 1990) (due process); *Secretary* v. *Alabama By-Products Corp.,* 4 F. M. S. H. R. C. 2128, 2129–2130 (1982) (vagueness); *Secretary* v. *Richardson,* 3 F. M. S. H. R. C. 8, 21–28 (1981) (equal protection). *Kaiser Coal Corp.* v. *Secretary,* 10 F. M. S. H. R. C. 1165 (1988), does not suggest otherwise, but simply held that declaratory relief from the Commission was unavailable for a question already under consideration in the Court of Appeals.

[20] Cf. *Weinberger* v. *Salfi,* 422 U. S. 749, 762 (1975). This case thus does not present the "serious constitutional question" that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim. See *Bowen* v. *Michigan Academy of Family Physicians,* 476 U. S. 667, 681, n. 12 (1986).

We conclude that the Mine Act's comprehensive enforcement structure, combined with the legislative history's clear concern with channeling and streamlining the enforcement process, establishes a "fairly discernible" intent to preclude district court review in the present case. See *Block* v. *Community Nutrition Institute,* 467 U. S., at 351. Petitioner's claims are "pre-enforcement" only because the company sued before a citation was issued, and its claims turn on a question of statutory interpretation that can be meaningfully reviewed under the Mine Act. Had petitioner persisted in its refusal to post the designation, the Secretary would have been required to issue a citation and commence enforcement proceedings. See 30 U. S. C. §§ 815(a) and 820 (1988 ed. and Supp. IV). Nothing in the language and structure of the Act or its legislative history suggests that Congress intended to allow mine operators to evade the statutory-review process by enjoining the Secretary from commencing enforcement proceedings, as petitioner sought to do here. To uphold the District Court's jurisdiction in these circumstances would be inimical to the structure and the purposes of the Mine Act.

## IV

Petitioner finally contends, in the alternative, that due process requires district court review because the absence of pre-enforcement declaratory relief before the Commission will subject petitioner to serious and irreparable harm. We need not consider this claim, however, because neither compliance with, nor continued violation of, the statute will subject petitioner to a serious prehearing deprivation.

The record before us contains no evidence that petitioner will be subject to serious harm if it complies with 30 U. S. C. § 813(f) and 30 CFR pt. 40 by posting the designations, and the potential for abuse of the miners' representative position appears limited. As the district manager of the MSHA stated to petitioner, designation as a miners' representative

does not convey "an uncontrolled access right to the mine property to engage in any activity that the miners' representative wants." App. 49. Statutory inspections of petitioner's mine need occur only twice annually and are conducted with representatives of the Secretary and the operator. Because the miners' representative cannot receive advance notice of an inspection, the ability of the non-employee UMWA designees to exercise these limited walkaround rights is speculative. See Tr. of Oral Arg. 31; Brief for International Union, UMWA, as *Amicus Curiae* 11, n. 2. Although it is possible that a miners' representative could abuse his privileges, we agree with the Court of Appeals that petitioner has failed to demonstrate that such abuse, entirely hypothetical on the record before us, cannot be remedied on an individual basis under the Mine Act. See 969 F. 2d, at 976–977, and n. 6; *Utah Power & Light Co.* v. *Secretary of Labor*, 897 F. 2d 447, 452 (CA10 1990); *Kerr-McGee Coal Corp.* v. *Secretary*, 15 F. M. S. H. R. C. 352, 361–362 (1993).[21]

Nor will petitioner face any serious prehearing deprivation if it refuses to post the designations while challenging

---

[21] Without addressing the merits of petitioner's underlying claim, we note that petitioner appears to misconstrue *Lechmere, Inc.* v. *NLRB*, 502 U. S. 527 (1992). The right of employers to exclude union organizers from their private property emanates from state common law, and while this right is not superseded by the NLRA, nothing in the NLRA expressly protects it. To the contrary, this Court consistently has maintained that the NLRA may entitle union employees to obtain access to an employer's property under limited circumstances. See *id.*, at 537; *NLRB* v. *Babcock & Wilcox Co.*, 351 U. S. 105, 112 (1956). Moreover, in a related context, the Court has held that Congress' interest in regulating the mining industry may justify limiting the private property interests of mine operators. See *Donovan* v. *Dewey*, 452 U. S. 594 (1981) (unannounced Mine Act inspections do not violate the Fourth Amendment).

the Secretary's interpretation.[22]  Although the Act's civil penalties unquestionably may become onerous if petitioner chooses not to comply, the Secretary's penalty assessments become final and payable only after full review by both the Commission and the appropriate court of appeals.  30 U. S. C. §§ 820(i) and 816.  A mine operator may request that the Commission expedite its proceedings, § 815(d), and temporary relief of certain orders is available from the Commission and the court of appeals.  §§ 815(b)(2) and 816(a)(2).  Thus, this case does not present the situation confronted in *Ex parte Young*, 209 U. S. 123, 148 (1908), in which the practical effect of coercive penalties for noncompliance was to foreclose all access to the courts.  Nor does this approach a situation in which compliance is sufficiently onerous and coercive penalties sufficiently potent that a constitutionally intolerable choice might be presented.

## V

We conclude that the Mine Act's administrative structure was intended to preclude district court jurisdiction over petitioner's claims and that those claims can be meaningfully reviewed through that structure consistent with due process.[23] The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[22] We note that petitioner expressly disavows any abstract challenge to the Mine Act's statutory review scheme, but limits its due process claim to the present situation where the Act allegedly requires petitioner to relinquish an independent statutory right.  See Brief for Petitioner 31, n. 31.

[23] Because we have resolved this dispute on statutory preclusion grounds, we do not reach the parties' arguments concerning final agency action, a cause of action, ripeness, and exhaustion.

JUSTICE SCALIA, with whom JUSTICE THOMAS joins, concurring in part and concurring in the judgment.

I join all except Parts III–B, IV, and V of the Court's opinion. The first of these consists of a discussion of the legislative history of the Federal Mine Safety and Health Amendments Act of 1977, 30 U. S. C. § 801 *et seq.* (1988 ed. and Supp. IV), which is found to "confir[m]," *ante,* at 209, the Court's interpretation of the statute. I find that discussion unnecessary to the decision. It serves to maintain the illusion that legislative history is an important factor in this Court's deciding of cases, as opposed to an omnipresent makeweight for decisions arrived at on other grounds. See *Wisconsin Public Intervenor* v. *Mortier,* 501 U. S. 597, 617, 621 (1991) (SCALIA, J., concurring in judgment).

As to Part V: The only additional analysis introduced in that brief section is the proposition that "the parties' arguments concerning final agency action, a cause of action, ripeness, and exhaustion" need not be reached "[b]ecause we have resolved this dispute on statutory preclusion grounds." *Ante,* at 218, n. 23. That is true enough as to the claims disposed of in Part III, but quite obviously not true as to the constitutional claim disposed of in Part IV, which is rejected not on preclusion grounds but on the merits.* The alleged impediments to entertaining that claim must be considered. It suffices here to say that I do not consider them valid.

---

*I understand Part IV to be dealing with the issue of whether the exclusion of judicial review adjudged in Part III is constitutional. Even though, as Part III has determined, the Federal Mine Safety and Health Amendments Act of 1977 precludes judicial review of the agency action that is the subject of the present suit, the district court retains jurisdiction under the grant of general federal-question jurisdiction, see 28 U. S. C. § 1331, for the limited purpose of determining whether that preclusion *itself* is unconstitutional and hence ineffective. Cf. *Ng Fung Ho* v. *White,* 259 U. S. 276, 282–285 (1922) (permitting habeas corpus review of deportation orders); *Battaglia* v. *General Motors Corp.,* 169 F. 2d 254, 257 (CA2 1948).

And finally, as to Part IV: The Court holds that the preclusion of review is constitutional "because neither compliance with, nor continued violation of, the statute will subject petitioner to a serious prehearing deprivation." *Ante*, at 216. I presume this means that any such deprivation will be *de minimis* (since I know of no doctrine which lets stand unconstitutional injury that is more than *de minimis* but short of some other criterion of gravity). It seems to me, however, that compliance with the inspection regulations *will* cause petitioner more than *de minimis* harm (assuming, as we must in evaluating the harm resulting from compliance, that petitioner is correct on the merits of his claims). Compliance will compel the company to allow union officials to enter its premises (and in a position of apparent authority, at that), notwithstanding its common-law right to exclude them, cf. *Lechmere, Inc.* v. *NLRB*, 502 U. S. 527, 534–535 (1992). And compliance will provide at least some confidential business information to officers of the union. (The UMWA's contention, on which the Court relies, that it is "speculative" whether a nonemployee miners' representative will be able to accompany the walk-arounds means only that such a representative may not *always* be able to do so. He will surely *often* be able to do so, since the statute *requires* that he "be given an opportunity to accompany" the inspector. 30 U. S. C. § 813(f).)

In my view, however, the preclusion of pre-enforcement judicial review is constitutional *whether or not* compliance produces irreparable harm—at least if a summary penalty does not cause irreparable harm (*e. g.*, if it is a recoverable summary fine) or if judicial review *is* provided before a penalty for *non*compliance can be imposed. (The latter condition exists here, as it does in most cases, because the penalty for noncompliance can only be imposed in court.) Were it otherwise, the availability of pre-enforcement challenges would have to be the rule rather than the exception, since complying with a regulation later held invalid almost *always*

produces the irreparable harm of nonrecoverable compliance costs. Petitioner's claim is that the imposition of a choice between (1) complying with what the Government says to be the law, and (2) risking potential penalties (without a prior opportunity to challenge the law in district court) denies due process. This is similar to the constitutional challenge brought in the line of cases beginning with *Ex parte Young*, 209 U. S. 123 (1908), but with one crucial difference. As the Court notes, see *ante*, at 217–218, petitioner, unlike the plaintiff in *Young*, had the option of complying *and then* bringing a judicial challenge. The constitutional defect in *Young* was that the dilemma of either obeying the law and thereby forgoing any possibility of judicial review, or risking "enormous" and "severe" penalties, effectively cut off all access to the courts. See 209 U. S., at 146–148. That constitutional problem does not exist here, nor does any other of which I am aware. Cf. *Bailey* v. *George*, 259 U. S. 16, 19 (1922). I would decide the second constitutional challenge (Part IV) on the simple grounds that the company can obtain judicial review if it complies with the agency's request, and can obtain presanction judicial review if it does not.