**Rajat K. GUPTA, Plaintiff,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Defendant.**

**No. 11 Civ. 1900(JSR).**

United States District Court, S.D. New York.

July 11, 2011.

Alan Roy Friedman, David Stanley Frankel, Gary P. Naftalis, Michael Stewart Oberman, Michael J. Sternhell, Robin Marie Wilcox, Kramer Levin Naftalis & Frankel, LLP, New York, NY, for Plaintiff.

Christopher Mark Bruckmann, Richard M. Humes, Office of the General Counsel, Securities and Exchange Commission, Washington, DC, for Defendant.

### OPINION AND ORDER

JED S. RAKOFF, District Judge.

A funny thing happened on the way to this forum. On March 1, 2011, the Securities and Exchange Commission (the "SEC" or "Commission")—having previously filed all of its Galleon-related insider trading actions in this federal district—decided it preferred its home turf. It therefore issued an internal Order Instituting Public Administrative and Cease-and-Desist Proceedings (the "OIP") against Rajat K. Gupta. The OIP alleged that Gupta, a former board member of both the Goldman Sachs Group, Inc. ("Goldman Sachs") and the Procter & Gamble Company ("Procter & Gamble"), had in 2008–09 knowingly disclosed material, nonpublic information about these companies to Raj Rajaratnam, the (now-convicted) principal of Galleon Management, LP ("Galleon"), who then traded on the basis of Gupta's inside information. *See* OIP ¶¶ 1–2. In language substantially similar to its complaints filed in this Court against some 28 other persons and entities accused of Galleon-related insider trading, the SEC alleged that by virtue of such conduct, Gupta willfully violated Section 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act"), including SEC Rule 10b–5 promulgated thereunder. *Id.* ¶ 5, On that basis, the SEC sought civil penalties, disgorgement, and various forms of injunctive relief, *id.* at p. 9, once again similar to the remedies it sought in this Court against the 28 other Galleon-related defendants.

In response to this seeming exercise in forum-shopping, Gupta promptly filed in this Court a Complaint for Declaratory and Injunctive Relief ("Complaint") against the SEC. The Complaint alleges that the SEC's unjustified decision to deprive Gupta, alone, of the opportunity to contest these allegations in federal court singles him out for uniquely unfavorable treatment in violation of the Equal Protec-

tion Clause of the Constitution. *See, e.g.,* Complaint ¶¶ 14, 16, 25. It further alleges that the SEC, in seeking penalties that, although previously available in federal court, only became available in an administrative action following the July 21, 2010 passage of the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. Law 111–203, 124 Stat. 1376 (the "Dodd–Frank Act"), is attempting to retroactively apply the provisions of the Dodd–Frank Act to conduct the OIP alleges occurred in 2008 and 2009, and thereby deprive Gupta of the procedural safeguards afforded defendants in federal court, including the constitutional right to a jury trial. *See* Complaint ¶¶ 1–2, 5–6.

On April 1, 2011, the SEC moved to dismiss the Complaint on various grounds, of which the principal ones are (1) that no statutory basis exists for the Court's assertion of jurisdiction; (2) that Gupta's claims against the SEC are barred by the doctrine of sovereign immunity; (3) that the doctrines of exhaustion and ripeness bar Gupta's claims; and (4) that Section 25(a)(1) of the Exchange Act, 15 U.S.C. § 78y(a)(1), when read together with section 703 of the Administrative Procedure Act ("APA"), grants to the courts of appeal exclusive jurisdiction to review orders entered in SEC administrative proceedings. Following full briefing and oral argument, and after careful consideration, the Court hereby denies the motion to dismiss, but concludes that the Complaint must be limited to the equal protection claim and that the case must proceed on an expedited basis.

By way of background, the SEC, in the year-and-a-half prior to filing the OIP, brought in this Court a series of related actions charging 21 individuals and 7 companies with Galleon-related insider trading. *See SEC v. Galleon Management, LP et al.,* 09 Civ. 8811, filed October 16, 2009; *SEC v. Hardin,* 10 Civ. 8600, filed November 12, 2010; *SEC v. Feinblatt et al.,* 11 Civ. 170, filed January 10, 2011; and *SEC v. Smith,* 11 Civ. 535, filed January 26, 2011. The OIP is not materially different from the complaints in the foregoing actions, except that (a) it includes allegations relating to Mr. Gupta, and (b) it seeks to have the Commission impose on Gupta the enhanced administrative penalties authorized by the Dodd–Frank Act.

It appears undisputed that, prior to the enactment of the Dodd–Frank Act on July 21, 2010, the SEC had *no* power to impose such penalties in an administrative action against a non-regulated person like Gupta. Accordingly, since the conduct here complained of occurred in 2008–09, the OIP in effect seeks to apply Dodd–Frank retroactively, in seeming violation of the well-established rule that a statute will be presumed not to impose penalties retroactively unless it expressly so states. *See, e.g., Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

Of course, an impermissible attempt to apply Dodd–Frank retroactively—even if initially commenced in the favorable forum of the SEC where the same Commission that approved the OIP would have to approve any final agency action imposing such penalties—is ultimately subject to review by a federal appellate court. But, according to the Complaint, the Commission's cavalier approach in approving an OIP seeking to apply Dodd–Frank retroactively against Gupta is simply one of several indications that the SEC has chosen to treat Gupta differently from all other Galleon-related defendants, in violation of his constitutional right of equal protection. Thus, for example, the Complaint alleges that, even before filing the OIP, the SEC deprived Gupta of administrative protections owed to him, such as by failing to

inform him that the SEC would be seeking an OIP, by failing to have the Commission genuinely consider his "Wells submission" setting forth his defense, and by arranging for the allegations of the OIP to be made prematurely and prejudicially available to the prosecution in the Rajaratnam criminal case.[1]  Complaint ¶¶ 2, 20–21.

According to the Complaint, the SEC's intent in taking these and other extraordinary steps was to selectively prejudice Mr. Gupta—the last of the Galleon-related defendants to be charged by the SEC and the one who most vigorously asserted his innocence.  Ultimately, the Complaint alleges, the SEC's plan is to gain an unfair advantage by depriving Gupta of the protections he would have had if the case were brought in federal court, including full discovery, application of the federal rules of evidence, the ability to assert third-party claims for indemnification and contribution, the ability to bring counterclaims against the SEC, and, most importantly, a right to a jury trial: all of which rights are being accorded to every other Galleon-related defendant except Gupta.  According to the Complaint: "Against the history of [these other] Galleon-related actions for civil penalties already brought in this Court, there is no benign and non-discriminatory explanation for the Commission's applying Dodd–Frank retroactively against Mr. Gupta, or more generally for filing the action against him administratively, rather than in federal court, as it has invariably done with similarly situated defendants.  To the contrary, the only plausible inference is that the Commission is proceeding how and where it is against Mr. Gupta for the bad faith purpose of shoring up a merit-less case by disarming its adversary."  Complaint ¶ 16.

For purposes of this motion only, the SEC accepts as true the well-pleaded allegations of the Complaint.  Nonetheless, the SEC moves to dismiss on several grounds.

■ First, the SEC argues that the Court lacks a statutory basis to assert jurisdiction over the case.  *See* Memorandum of Law in Support of Motion to Dismiss Complaint ("SEC Mem.") at 6–7.  Actually, however, since Gupta has alleged constitutional violations, the Court has jurisdiction pursuant to 28 U.S.C. § 1331, which grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Complaint also alleges, on its face, the prerequisites for jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201.  To be sure, Congress may choose to limit a district court's jurisdiction over the actions of a federal administrative agency.  But in the absence of some other statute dictating such preclusion, Section 1331 and Section 2201 each confer jurisdiction on this Court over the claims made in the Complaint.  *See Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.,* —— U.S. ——, 130 S.Ct. 3138, 3150, 177 L.Ed.2d 706 (2010)("*Free Enterprise* ");  *Califano v. Sanders,* 430 U.S. 99, 104–07, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

■ Second, the SEC argues that Gupta's claims are barred by the doctrine of sovereign immunity.  *See* SEC Mem. at 9–12.  "The United States, as sovereign, is immune from suit save as it consents to be sued."  *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058

---

**1.** Evidence regarding Mr. Gupta's "tips" figured prominently in the criminal case against Rajaratnam.

(1941). An agency may be sued only when there has been an express Congressional waiver of sovereign immunity, and then only in the specific manner that Congress has provided. *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). However, the SEC is subject to Section 702 of the Administrative Procedure Act ("APA"), which provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702 (emphasis in original).

By its plain language, Section 702 waives sovereign immunity for actions against an agency, such as Gupta's action here, that seek relief other than money damages. *See Bowen v. Massachusetts,* 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). Moreover, "the APA's waiver of sovereign immunity applies to any suit whether under the APA or not" because Section 702 "waives sovereign immunity for [any] action in a court of the United States seeking relief other than money damages," not solely for an action brought under the APA. *Trudeau v. Fed. Trade Comm'n,* 456 F.3d 178, 186 (D.C.Cir.2006) (citations omitted). *See also Sharkey v. Quarantillo,* 541 F.3d 75, 91 (2d Cir.2008) ("Section 702 of the APA waives the federal government's sovereign immunity in actions for non-monetary relief against an agency or officer thereof brought under the general federal question jurisdictional statute.") (citation, quotation marks, and brackets omitted); *Up State Federal Credit Union v. Walker,* 198 F.3d 372, 375 (2d Cir.1999) (unless exceptions in last sentence of Section 702 apply, "the APA does create a general waiver of sovereign immunity as to equitable claims against government agencies").

It is true that the Second Circuit, in *Sprecher v. Graber,* 716 F.2d 968, 974 (2d Cir.1983), suggested that "Congress did not intend to waive sovereign immunity where a matter is statutorily committed to agency discretion or where 'another statute provides a form of relief which is expressly or impliedly exclusive.'" (citation omitted). *Sprecher,* however, is irrelevant to the instant dispute, because the only statute that the SEC has plausibly suggested "forbids the relief" that is sought here (and therefore invokes the exception to the last sentence of Section 702) is Section 25(a)(1) of the Exchange Act, which was held in *Free Enterprise, supra,* not to deprive district courts of original jurisdiction of suits against the SEC in appropriate circumstances. *Free Enterprise,* 130 S.Ct. at 3150. The sovereign

immunity question therefore reduces to the question of whether Gupta's action meets the standards of *Free Enterprise* for bringing an action against the SEC in a district court.

■ Third, the SEC argues that Gupta must exhaust administrative remedies before seeking redress in federal court. *See* SEC Mem. at 21. This is just another variation on the same theme: if federal law gives the SEC exclusive jurisdiction to remedy, at least in the first instance, the constitutional and other infirmities of which Gupta complains, then he has to exhaust these remedies first. *See United States ex rel. St. Regis Mohawk Tribe v. President R.C.-St. Regis Mgmt. Co.*, 451 F.3d 44, 50 (2d Cir.2006). But as the Supreme Court held in *Free Enterprise, supra*, the SEC does not have exclusive jurisdiction over challenges to SEC-related actions that meet certain criteria, arguably present here. And, as the Second Circuit stated in *Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir.1979), in which appellants challenged the SEC's legal authority to proceed against them pursuant to a newly-promulgated SEC rule, "[w]hile the Commission's administrative proceeding is not 'plainly beyond its jurisdiction,' nevertheless to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking." *Id.* at 577.

■ Relatedly, the SEC argues that the instant action is not ripe for judicial review. To determine whether a challenge to administrative action is ripe for judicial review, the Court must consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir.2008). In this case, these questions are inseparable from

whether the Court has jurisdiction to consider Gupta's claims and whether he is required to exhaust administrative remedies, so the same analysis applies. *See also Touche Ross & Co. v. SEC, supra.*

■ Accordingly, all of the SEC's asserted grounds for dismissal hinge on its fourth and final argument: that the special statutory review scheme established by Section 25(a)(1) of the Exchange Act, 15 U.S.C. § 78y(a)(1), when read together with Section 703 of the APA, prevents this Court from exercising jurisdiction over Gupta's claims. SEC Mem. at 12–13.

Section 703 of the APA provides as follows:

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

5 U.S.C. § 703. Section 25(a)(1), in turn, provides:

A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in

such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

15 U.S.C. § 78y(a)(1). Although the SEC contends that the two provisions together establish that review of any SEC proceeding is available only in a United States court of appeals and only after the administrative proceeding is completed, *see* SEC Mem. at 11, in fact the two statutes, on their face, provide that a lawsuit challenging any action by the SEC may be brought in any court of competent jurisdiction if the statutorily-provided review of final SEC orders by the courts of appeal is in some relevant respect inadequate: the very issue presented here.

Any doubt on this score was resolved by the Supreme Court's 2010 decision in *Free Enterprise, supra,* a case involving a challenge to the constitutionality of the Public Company Accounting Oversight Board (the "Board"), an adjunct to the SEC created by the Sarbanes–Oxley Act of 2002, 116 Stat. 745. *See* 130 S.Ct. at 3147. Petitioners, an accounting firm and a nonprofit organization, sued the Board and its members in the district court for the District of Columbia, arguing "that the Sarbanes–Oxley Act contravened the separation of powers by conferring wide-ranging executive power on Board members without subjecting them to Presidential control." *Id.* at 3149. Petitioners also challenged the Act under the Appointments Clause, which requires "Officers of the United States" to be appointed by the President with the Senate's advice and consent. *Id.* Petitioners sought a declaratory judgment declaring the Board unconstitutional and an injunction preventing the Board from exercising its powers. *Id.*

The Supreme Court first considered whether the District Court had jurisdiction to entertain petitioner's claims in the first instance. The Supreme Court agreed with both the District Court and the D.C. Circuit "that the statutes providing for judicial review of Commission action did not prevent the District Court from considering petitioners' claims." *Id.* at 3150. The Supreme Court held:

The Sarbanes–Oxley Act empowers the Commission to review any Board rule or sanction. *See* 15 U.S.C. §§ 7217(b)(2)-(4), (c)(2). Once the Commission has acted, aggrieved parties may challenge "a final order of the Commission" or "a rule of the Commission" in a court of appeals under § 78y,[2] and "[n]o objection . . . may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so." §§ 78y(a)(1), (b)(1), (c)(1).

The Government reads § 78y as an exclusive route to review. But the text does not expressly limit the jurisdiction that other statutes confer on district courts. *See, e.g.,* 28 U.S.C. §§ 1331, 2201. Nor does it do so implicitly. Provisions for agency review do not restrict judicial review unless the "statutory scheme" displays a "fairly discernible" intent to limit jurisdiction, and the claims at issue "are of the type Congress intended to be reviewed within th[e] statutory structure." *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 207, 212, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (internal quotation marks omitted). Generally, when Congress creates procedures "designed to permit agency expertise to be brought to bear on particular problems," those procedures "are to be exclusive." *Whitney Nat. Bank in Jefferson Parish v. Bank of New Orleans &*

---

**2.** Section 25 of the Exchange Act is codified    as 15 U.S.C. § 78y.

*Trust Co.,* 379 U.S. 411, 420, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). But we presume that Congress does not intend to limit jurisdiction if "a finding of preclusion could foreclose all meaningful judicial review"; if the suit is "wholly collateral to a statute's review provisions"; and if the claims are "outside the agency's expertise." *Thunder Basin, supra,* at 212–213, 114 S.Ct. 771 (internal quotation marks omitted).

*Id.* at 3150.

Applying these factors, the Supreme Court concluded that Section 25(a) did not preclude judicial review. First, it determined that petitioners could not meaningfully pursue their constitutional claims under the Government's theory, as Section 25(a) "provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule." *Id.* (emphasis in original). Second, it concluded that petitioners' challenge was collateral to any SEC orders or rules from which review might be sought, because petitioners "object[ed] to the Board's existence, not to any of its auditing standards." *Id.* Moreover, the Supreme Court declined to require petitioners to first incur sanctions from the Board before bringing their action in the District Court. *Id.* at 3150–51. Finally, the Court determined that petitioners' constitutional claims were outside the SEC's competence and expertise because the questions they presented "[did] not require 'technical considerations of [agency] policy,'" and instead presented "standard questions of administrative law, which the courts are at no disadvantage in answering." *Id.* at 3151 (quoting *Johnson v. Robison,* 415 U.S. 361, 373, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974)).

■ The same mode of analysis applies here. As a general matter, this Court must first determine whether Section 25(a) of the Exchange Act, taken together with Section 703 of the APA, limits the Court's jurisdiction. While in some cases it may, *see, e.g., Altman v. SEC,* 768 F.Supp.2d 554 (S.D.N.Y.2011), no such limit applies in cases that meet the three criteria stated in *Free Enterprise, viz:* "a finding of preclusion could foreclose all meaningful judicial review"; the suit is "wholly collateral to a statute's review provisions"; and the claims are "outside the agency's expertise." *Free Enterprise,* 130 S.Ct. at 3150 (2010). *See also Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 212–213, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994).

■ Gupta's complaint easily satisfies the third prong of this three-prong test. His claims as to the constitutional violations he will suffer from the allegedly improper retroactive application of the Dodd–Frank Act are not peculiarly within the SEC's competence or expertise. Indeed, questions of statutory retroactivity are far more commonly reviewed by district courts than by the SEC, and "administrative expertise [is] not implicated where a constitutional violation is alleged, because such allegations are particularly suited to the expertise of the judiciary," *Adkins v. Rumsfeld,* 389 F.Supp.2d 579, 588 (D.Del.2005). *See also Free Enterprise,* 130 S.Ct. at 3151. This is equally true of Gupta's equal protection claims. Indeed, if anything, it would be inherently difficult for the Commission, which will have to approve any final order against Gupta, to be deciding whether it itself engaged in unequal protection in bringing its charges against Gupta.

■ Whether Gupta's complaint satisfies the second prong of *Free Enterprise,* in that its claims are "wholly collateral" to Section 25(a)(1)'s review provisions, is more problematic. The petitioners in *Free Enterprise* were bringing a facial constitu-

tional challenge to a statute unrelated to any allegation that they violated any law or regulation; indeed, they challenged the very existence of the Public Company Accounting Oversight Board, not any of its rules or standards. *Free Enterprise*, 130 S.Ct. at 3150. And in *Touche Ross & Co. v. S.E.C., supra,* while the appellants were facing disciplinary proceedings brought by the SEC, the only claim that the Second Circuit allowed to proceed in the district court was a challenge to the Commission's statutory authority to promulgate the new rule pursuant to which the SEC proceedings had been brought.

By contrast, so far as Gupta's "retroactivity" claim is concerned, Gupta does not challenge the facial validity of the Dodd–Frank Act, but rather the SEC's retroactive application of one provision of that Act relating to only one of several penalties the OIP seeks against him. Prior judicial resolution of such a potentially peripheral issue cannot be what the Supreme Court had in mind when it decreed that the claim brought in district court must be *"wholly* collateral" to the administrative proceeding. *Free Enterprise*, 130 S.Ct. at 3150 (emphasis supplied). In addition, ordinary principles of conservation of judicial resources counsel against reaching in advance an issue that very likely may be mooted during the course of the administrative proceeding.[3]

■ The same is not true, however, of Gupta's equal protection claim. The Complaint alleges that the SEC intentionally, irrationally, and illegally singled Gupta out for unequal treatment in a bad faith attempt to deprive him of constitutional and other rights, in retaliation for his strenuous assertion of his innocence. *See, e.g.,* Gupta Compl. ¶ 16. These allegations,

which, if adequately pleaded, must be taken as true for purposes of this motion, would state a claim even if Gupta were entirely guilty of the charges made against him in the OIP. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (discussing requirements for demonstrating selective prosecution). Indeed, even if the SEC were acting within its discretion when it imposed disparate treatment on Gupta, that would not necessarily exculpate it from a claim of unequal protection if the unequal treatment was still arbitrary and irrational. *See, e.g., Village of Willowbrook v. Olech*, 528 U.S. 562, 564–66, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)("successful equal protection claims [may be] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). Accordingly, the Court concludes that Gupta's equal protection claim satisfies the second prong of the *Free Enterprise* test.

■ As for the first prong of the *Free Enterprise* test—that a finding of preclusion would foreclose all meaningful judicial review—Gupta's equal protection claim also satisfies this requirement, for two reasons.

First, the SEC's administrative machinery does not provide a reasonable mechanism for raising or pursuing such a claim. The SEC's Rules of Practice do not permit counterclaims against the SEC, *In the Matter of Jeffrey L. Feldman,* Admin. Proc. File No. 3–8063, 1994 WL 23256, at *2, 1994 SEC LEXIS 186, at *4–5 (Jan. 14, 1994), nor do they allow the kind of discov-

---

**3.** This is not to say, however, that evidence of the SEC's allegedly unjustified decision to approve an OIP that seeks such retroactive application in alleged violation of ordinary legal principles cannot be considered as evidence of Gupta's equal protection claim.

ery of SEC personnel that would be necessary to elicit admissible evidence corroborative of such a claim. The Commission, having approved the OIP (and that after only pro forma consideration, according to the Complaint) would be inherently conflicted in assessing such a claim, and, at a minimum, Gupta would be forced to endure the very proceeding he alleges is the device by which unequal treatment is being visited upon him. *See Touche Ross & Co., supra.*

Second, as already noted, Gupta's equal protection claim does not have anything to do with whether or not Gupta committed the acts of insider trading alleged in the OIP. Indeed, the selective prosecution/equal protection claim will turn entirely on extrinsic evidence of whether the SEC's decision to treat Gupta differently from the other Galleon-related defendants was irrational, arbitrary, and discriminatory. Thus, nothing that happens in the administrative proceeding will bear on this claim, and no administrative record bearing on this claim will be developed for any federal appellate court to review.

Conversely, there is no reason not to address the equal protection claim here before Gupta suffers the very prosecution he alleges constitutes the act of unequal protection. The administrative hearing of the OIP, originally scheduled for July 18, 2011, has been postponed a full six months, providing this Court with ample opportunity to resolve this injunctive action on the merits.

To be sure, it would not be prudent to allow every subject of an SEC enforcement action who alleges "bad faith" and "selective prosecution" to be able to create a diversion by bringing a parallel action in federal district court. But such diversionary tactics can be quickly disposed of in the ordinary case through dismissal for failure to plead a plausible claim. *See*

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Here, by contrast, we have the unusual case where there is already a well-developed public record of Gupta being treated substantially disparately from 28 essentially identical defendants, with not even a hint from the SEC, even in their instant papers, as to why this should be so. A fear of abuse by litigants in other cases should never deter a federal court from its unfailing duty to provide a forum for vindication of constitutional protections to those who can make a substantial showing that they have indeed been denied their rights.

The Court has considered the SEC's additional arguments and finds them without merit. The motion to dismiss is therefore denied, but the theory of the Complaint is narrowed to one of equal protection. Since Gupta seeks injunctive relief, further proceedings must occur on a moderately expedited basis. Accordingly, the parties should confer as to a case management plan that (a) is tailored to address only the equal protection claim, and (b) will allow for the completion of all discovery, subsequent motion practice, and any ultimate evidentiary hearing within the next four months. The parties should submit their joint or several case management plans to the Court, in writing, by no later than July 18, 2011.

SO ORDERED.