**GTE SOUTH INCORPORATED, Plaintiff,**

**v.**

**Theodore V. MORRISON, Jr., et al., Defendants.**

**Civil Action No. 3:96CV1015.**

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 24, 1997.

son, in their official capacity as Commissioners of the Virginia State Corporation Commission.

George A. Somerville, James Crawford Roberts, Dabney Jefferson Carr, IV, Mays & Valentine, Richmond, VA, Wilma R. McCarey, John J. Langhauser, AT & T Communications of Virginia, Inc., Oakton, VA, for AT & T Communications of Virginia, Inc.

Elizabeth Powell Mason, Sandy Thomas Tucker, Howard W. Dobbins, Robert Dean Perrow, Williams, Mullen, Christian & Dobbins, Richmond, VA, for MCI Telecommunications Corporation, MCIMETRO Access Transmission Services of Virginia, Inc. Services.

## MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on Defendants Theodore V. Morrison, Jr.'s, Hullihen Williams Moore's, and I. Clinton Miller's (in their official capacities as Commissioners of the Virginia State Corporation Commission) ("Commissioners") Motion to Dismiss; Defendant AT & T Communications of Virginia, Inc.'s ("AT & T") Motion to Dismiss; and Defendants MCI Telecommunications Corporation's and MCIMETRO Access Transmission Services of Virginia, Inc.'s ("MCI") Motion to Dismiss. Defendants filed their motions pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b). For the reasons stated below, the Court will GRANT Defendants' motions and DISMISS Plaintiff's Complaint WITHOUT PREJUDICE.

## I. BACKGROUND

Edward Joseph Fuhr, Hunton & Williams, Richard David Gary, Richmond, VA, for GTE South Incorporated.

William B. Poff, Woods, Rogers & Hazelgrove, Roanoke, VA, James Constantine Dimitri, State Corporation Commission, Office of General Counsel, Anthony J. Gambardella, Jr., Woods, Rogers & Hazelgrove, P.L.C., Richmond, VA, for Hullihen Williams Moore, I. Clinton Miller, Theodore V. Morri-

### A. The Telecommunications Act of 1996

■ The Telecommunications Act of 1996 (the "Act") is intended to foster competition in local telephone service. *See* Telecommunications Act of 1996, Pub.L. No. 104-104, §§ 251-252, 110 Stat. 56, 61-70 (1996) (to be codified at 47 U.S.C. §§ 251-252). The Act mandates that existing local exchange carriers ("LEC"s)—like Plaintiff GTE South In-

corporated ("GTE")—allow interconnecting services providers access to local networks in order to provide competing local telephone service. *Id.* at § 251(c).

The Act directs the incumbent telephone companies to negotiate purchase and interconnection agreements with the new entrants. *Id.* at § 252. The parties may arrive at an agreement as to the terms for providing interconnecting services either by negotiation or arbitration. *Id.* at § 252(a)–(b). If the negotiating parties cannot reach agreement after 135 days, either party may petition the appropriate state regulatory commission ("State commission"), in this case the Virginia State Corporation Commission ("SCC"), to conduct a binding arbitration of the disputed issues. *Id.* at § 252(b). The State commission must "resolve each issue set forth in the petition [for arbitration] ... not later than 9 months after the date" of the initial request. *Id.* at § 252(b)(4)(C). Section 252 sets forth the arbitration procedure to be followed by interconnecting service providers and LECs.

Once the parties arrive at either an arbitrated or negotiated agreement, the agreement is submitted to the State commission for approval or rejection. The State commission can approve the agreement either by express ratification or by inaction (the agreement is deemed approved if the commission fails to approve the arbitrated agreement within thirty days after submission). *Id.* at § 252(e)(1), 252(e)(5). The Act then provides for Federal district court review. *Id.* at § 252(e)(6).

### B. The SCC GTE Arbitration

On 12 March 1996, AT & T made its request to GTE for interconnection, network elements and services. On 16 August 1996, Defendant AT & T filed a petition with the SCC seeking arbitration of unresolved issues with GTE. GTE filed a response to the petition under the procedures set forth in section 252 and the implementing regulations of the SCC. *See* § 252, 110 Stat. at 66–70; 20 VAC 5–400–190, 12 Va.Regs.Reg. 24, 3268 (1996). The SCC consolidated a number of arbitrations pursuant to § 252(g) and also responded to pricing issues in the Federal

Communications Commission's ("FCC") 8 August 1996 Order which established default proxy prices and ranges that a State commission could utilize. *See* Complaint Ex. 2 ("Pricing Order") at 2. On 15 October 1996 the Eighth Circuit stayed the pricing provisions and "pick and choose" provision of the FCC's order. The SCC entered an Interim Order on 23 October 1996 in response to the stay and allowed parties additional time to file testimony and evidence.

Following the presentation of evidence to the full commission, the SCC entered an "Order Resolving Rates for Unbundled Network Elements and Interconnection, Wholesale Discount for Services Available for Resale, and Other Matters" (the "Pricing Order") on 11 December 1996. *Id.* The SCC also entered on the same date an "Order Resolving Non–Pricing Arbitration Issues and Requiring Filing of Interconnection Agreement" (the "Non–Pricing Order") as to GTE and AT & T. Complaint at Ex. 3 ("Non–Pricing Order"). The orders require the parties to file by 10 February 1997 "an interconnection agreement in this docket incorporating the applicable findings of the Commission as well as the parties' Stipulations in this case." *Id.* at 17. Pursuant to § 252(b)(4)(C), the SCC was required to complete compulsory arbitration and to resolve all open issues between GTE and AT & T by no later than 11 December 1996.

### C. GTE's Complaint

GTE brings this action alleging that the SCC's 11 December 1996 orders are violative of §§ 251 and 252. GTE disputes the Commission's arbitration decisions regarding (1) pricing standards for providing interconnection, network elements and services; (2) the expansive categorization of "network elements"; and (3) the requirements for GTE to modify or upgrade its network for competitors. GTE seeks declaratory relief that (1) the 11 December 1996 Order violates the Act; (2) the Act requires that prices are based on GTE's costs and avoided costs; (3) GTE is entitled to competitively neutral, nonbypassable end user charges to cover GTE's standard costs; and injunctive relief that De-

fendants are permanently enjoined from taking action under the 11 December 1996 orders.

## D. Defendants' Motions to Dismiss

Defendants present three major arguments: all Defendants contend that (A) the Court lacks subject matter jurisdiction, and (B) the case is not ripe for review until the SCC rejects or accepts an agreement between the parties; the Commissioner Defendants argue that (C) the Eleventh Amendment obviates the Court's jurisdiction over the Commissioners. *See* Fed.R.Civ.P. 12(b)(1), 12(b)(6), 12(b)(2). Since the Court finds that it lacks subject matter jurisdiction, the Court will not address the remaining arguments.

## II.  RULE 12(b)(1) STANDARD

■ Subject matter jurisdiction of the lower federal courts is determined by Congress " 'in the exact degrees and character which to Congress may seem proper for the public good.' " *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 433, 109 S.Ct. 683, 688, 102 L.Ed.2d 818 (1989) (quoting *Cary v. Curtis,* 44 U.S. (3 How.) 236, 245, 11 L.Ed. 576 (1845)). Plaintiff, the party asserting jurisdiction, bears the burden of proving that federal jurisdiction is proper. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982).

■ A Rule 12(b)(1) motion may attack subject matter jurisdiction in two different ways.[1] First, a Rule 12(b)(1) motion may attack the complaint on its face, asserting simply that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams,* 697 F.2d at 1219. If such is the case, "the facts alleged in the complaint are assumed to be true and the Plaintiff, in effect, is afforded the same pro-

cedural protection as it would receive under a Rule 12(b)(6) consideration." *Id.*

■■ Second, the motion may challenge the truth of the jurisdictional allegations of the complaint. *See Adams,* 697 F.2d at 1219. In cases where the motion challenges the actual existence of the Court's subject matter jurisdiction, the Court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.; see also Ocean Breeze Festival Park, Inc. v. Reich,* 853 F.Supp. 906, 911 (E.D.Va.1994), *aff'd sub nom. Virginia Beach Policemen's Benevolent Ass'n v. Reich,* 96 F.3d 1440 (4th Cir.1996) (table, unpublished disposition).

The instant case falls into the former category. The parties do not dispute the facts alleged in the Complaint which are relevant to the jurisdictional purposes. Jurisdiction depends on the Court's interpretation of § 252(e)(6) of the Telecommunications Act of 1996 and the undisputed facts as applied to this interpretation. *See* 47 U.S.C. § 252(e)(6).

## III.  ANALYSIS

■ Defendants argue that the Court lacks subject matter jurisdiction because § 252(e)(6) provides Federal district court review only of the SCC's approval or disapproval of a final agreement. In the instant case, the 11 December 1996 orders addressed the disputed issues as presented through § 252's arbitration procedures. However, the SCC has not approved or rejected a final agreement because the parties have not submitted an agreement to the SCC.[2]

■ A finding that Congress intended to preclude review "prevents a district court from exercising subject-matter jurisdiction." *Thunder Basin Coal Co. v. Reich,* 510 U.S.

---

1. Rule 12(b)(1) states in relevant part that "the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter. . . ." Fed.R.Civ.P. 12(b)(1). Further, Rule 12(h)(3) states that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

2. At the 20 February 1997 hearing, counsel for the Commissioners represented to the Court that the parties were supposed to submit an agreement to the SCC by 24 February 1997, but compliance with that date is questionable.

200, 202, 114 S.Ct. 771, 774, 127 L.Ed.2d 29 (1994). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether claims can be afforded meaningful review." *Id.* at 207, 114 S.Ct. at 776 (citations omitted).[3]

Section 252(e)(6) provides for Federal District Court review of agreements: "... In any case in which a State commission makes a *determination* under [section 252], any party aggrieved by such *determination* may bring an action in an appropriate Federal district court *to determine whether the agreement* or statement meets the requirements of section 251 of this title and this section." § 252(e)(6), 110 Stat. at 69 (emphasis added).[4]

■ GTE argues that the two December 1996 orders are "determinations" by the SCC and are therefore reviewable by the Court. Defendants contend that the Court only has jurisdiction to determine whether the "agreement" meets the requirements of the Act and there has been no agreement between the parties. "A court must endeavor to see a statute as a whole, not to construe statutory sections or phrases in isolation." *Gracey v. International Bhd. of Elec. Workers Local Union No. 1340,* 868 F.2d 671, 675 (4th Cir. 1989) (citing *Stafford v. Briggs,* 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980)).

"Determination," in its plain meaning and as used in other parts of § 252, may include orders such as the 11 December orders. For example, § 252(d)(1) discusses "[d]eterminations by a State commission of the just and reasonable rate for the interconnection of facilities and equipment." § 252(d)(1), 110

Stat. at 67. Hence, determination points to the various decisions made by the SCC throughout the arbitration period which later become part of the agreement and are thereby reviewable.

The remainder of § 252(e)(6) clarifies that the Federal district court determines whether the *agreement,* which was arguably dictated by the orders or determinations of the SCC, is within the boundaries of the Act. Hence, when reading the entire paragraph, the language clearly indicates that the Court will review the decisions of the SCC based on whether the *agreement* entered into by the parties pursuant to the arbitration decisions is in compliance with the Act. Since the parties do not dispute, and the Complaint explains, that there was no agreement between AT & T and GTE when the Complaint was filed, the Court does not have subject matter jurisdiction under the Act.[5]

The structure of the statute also supports this conclusion. Section 252 sets out a four-stage approach to developing an interconnection agreement:

> First, voluntary negotiations for the first 135 days, § 252(a);
> Second, arbitration of the unresolved issues commencing during the 135th to 160th day and concluded by the State commission within nine months of the first interconnection agreement request, § 252(b);
> Third, approval or rejection by the State commission, § 252(e)(1)–(4); and
> Fourth, review of State commission actions, § 252(e)(6).

The SCC has not completed the third step in the statutory procedures because the parties

---

**3.** The Court acknowledges GTE's argument that *Thunder Basin* does not apply to the instant case because *Thunder Basin* dealt with limited federal district court jurisdiction in a statutory scheme that required court of appeals review of agency determinations. However, this distinction does not preclude the applicability of the *Thunder Basin* rationale to this case. The clear analytical approach in *Thunder Basin* for addressing Congress' presentment of subject matter jurisdiction is equally appropriate here.

**4.** The reference to review of a "statement" refers to a "statement of generally available terms" that a "Bell operating company may prepare," and is

not relevant to this litigation. § 252(f)(1), 110 Stat. at 69.

**5.** *Cf. Citizens' Util. Ratepayer Bd. v. McKee,* 946 F.Supp. 893, 895 (D.Kan.1996) (holding that the plaintiff was not an aggrieved party and noting that "section 252(e)(6) limits the type of action that the court may hear to only those actions in which an aggrieved party seeks a determination of whether an agreement between the interconnecting service provider and the local exchange carrier satisfies the requirements of sections 251 and 252").

have not submitted an agreement. The accelerated timetables and paragraph structure within § 252 require the completion of SCC action prior to district court review so as not to "disrupt[ ] the review scheme Congress intended." *Thunder Basin,* 510 U.S. at 206, 114 S.Ct. at 776; *see also,* S.Conf.Rep. No. 230, 104th Cong., 2d Sess. (Feb. 1, 1996) ("The House recedes to the Senate on new section 252(e). Agreements arrived at through voluntary negotiation or compulsory arbitration must be approved by the State commission under the new section 252(e), which provides a specific timetable for State action, provides [FCC] authority to act if a State does not, and preserves State authority to enforce State law requirements in agreements approved under this section.").

GTE's argument that the SCC decisions are final is not persuasive. GTE is correct that the nine month statutory period for the State commission to resolve open issues through arbitration is over. *See* § 252(b)(4)(B), 110 Stat. at 67 (the period ended on 11 December 1996, the day the SCC orders were entered). However, the nine month deadline does not specifically apply to approval or rejection of the agreement. *See* § 252(e)(1)–(4), 110 Stat. at 68–69. Under the statute, the district court will be reviewing the SCC determinations from the arbitration proceedings by determining whether the agreement complies with the statute.

The statute's structure and purpose would be thwarted if this Court's review commenced before the completion of SCC proceedings. As the Commissioners argue, "[t]he SCC cannot finally rule on issues addressed by its orders until it has seen how those issues function, both economically and pragmatically, in the context of a complete interconnection agreement." Commissioners' Memorandum in Support of the Motion to Dismiss ("Commissioners' Mem.") at 9 n. 9. Further, under SCC rules implementing § 252, interested persons will be permitted to comment on the agreement before the SCC's decision is made, and the parties to the agreement are permitted to reply to any comments that are filed. *See* 20 VAC 5–400–190, § C(8), 12 Va.Regs.Reg. 24, 3268 (1996).

In sum, the statute is unambiguous the Court's jurisdiction is limited to determining whether the *agreement* meets the requirements of the Act. *See* § 252(e)(6), 110 Stat. at 69. Absent an agreement, the Court lacks subject matter jurisdiction.

## IV. CONCLUSION

For the reasons hereinbefore stated, the Court will GRANT Defendants' motions and DISMISS Plaintiff's Complaint WITHOUT PREJUDICE.