**GTE NORTH INCORPORATED,**
Plaintiff,

v.

**Craig A. GLAZER, Chairman,
et al., Defendants.**

No. 5:97CV137.

United States District Court,
N.D. Ohio.

May 12, 1997.

James D. Robenalt, James B. Niehaus, Thompson, Hine & Flory, Cleveland, OH, John A. Rogovin, Paul G. McNamara, O'Melveny & Myers, Washington, DC, Lewis F. Powell, III, J. Burke McCormick, Hunton & Williams, Richmond, VA, Paul T. Cappuccio, Eugene F. Assaf, Kirkland & Ellis, Washington, DC, William P. Barr, Ward W. Wueste, Jr., M. Edward Whelan, III, Washington, DC, for GTE North, Inc.

Ann E. Henkener, Office of the Atty. General, Columbus, OH, Duane William Luckey, Steven T. Nourse, Office of the Atty. General, Public Utilities Section, Columbus, OH, for Craig A. Glazer, Jolynn Barry Butler, Richard M. Fanelly, David W. Johnson.

Anthony J. O'Malley, Vorys, Sater, Seymour & Pease, Cleveland, OH, C. William O'Neil, Vorys, Sater, Seymour & Pease, Columbus, OH, Frederick J. Artwick, Anne E. Rea, Jon Loevy, Sidley & Austin, Chicago, IL, William A. Davis, II, Robert W. Quinn, John J. Reidy, AT&T, Chicago, IL, for AT&T Communications of Ohio.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon Motions to Dismiss by Defendants AT & T Communications of Ohio ("AT & T") (Dkt.# 6) and the Commissioners of the Public Utilities Commission of Ohio ("PUCO") (Dkt.# 20). GTE North Incorporated ("GTE") filed this declaratory judgment action to set aside arbitration determinations made by the PUCO pursuant to the Telecommunications Act of 1996 ("the Act"). Defendants allege that this action is a premature appeal by GTE from an interlocutory order of the PUCO in the interconnection proceeding between AT & T and GTE.

Defendants submit three major arguments to support their contention that the Complaint is premature and improper.

First, because Congress authorized federal district court review only of final State commission orders approving or rejecting interconnection agreements, the Court lacks jurisdiction of the subject matter. *See* Fed. R.Civ.P. 12(h)(3). ("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action").

Second, GTE's challenge is not ripe for judicial review, because the State commission proceedings are not complete and their effects could not possible be "felt in a concrete way" by GTE until an interconnection agreement is approved or rejected by the PUCO. *See, e.g.; Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967).

And, finally, the declaratory relief that GTE seeks is wholly discretionary, and it is settled law that district courts should decline to exercise jurisdiction where, as here, a litigant's attempts to use declaratory relief "would result in piecemeal trials of the various controversies presented or in the trial of a particular issue without resolving the entire controversy." *Yellow Cab Co. v. City of Chicago,* 186 F.2d 946, 950–51 (7th Cir.1951) (citations omitted); *see also Nationwide Ins. v. Zavalis,* 52 F.3d 689, 692 (7th Cir.1995).

Although, the Commissioners also raise a series of procedural and immunity issues, the Court finds Defendants' first argument to be dispositive of the case, and shall not address Defendant's remaining arguments.

## THE ACT

In the Act, Congress sought to shift local telephone monopoly markets to competition as quickly as possible by requiring Plaintiff and other incumbent local exchange carriers to enter into interconnection agreements allowing AT & T and other requesting telecommunications carriers to offer consumers local service choices. H.R.Rep. No. 104–204 at 85 (1995). *See also* 47 U.S.C. §§ 251(c), 252(a).

The Act directs the incumbent telephone companies to negotiate purchase and interconnection agreements with the new entrants pursuant to § 252. The parties may arrive at an agreement as to the terms for providing interconnection services either by negotiation or arbitration. *Id.* at § 252(a)–(b). During the period from the 135th to the

160th day (inclusive) after the date on which an incumbent receives a request for negotiation, the incumbent or any other party to the negotiation may petition the PUCO to arbitrate any open issues. *Id.* at § 252(b). The PUCO must resolve each issue set forth in the petition not later than nine months after the date of the initial request. *Id.* at § 252(b)(4)(C).

Once the parties arrive at either an arbitrated or negotiated agreement, the agreement is submitted to the PUCO for approval or rejection. The PUCO can approve the agreement either by express ratification or by inaction (the agreement is deemed to be approved if the PUCO fails to approve an arbitrated agreement within thirty days after submission or a negotiated agreement within ninety days). Id. at § 252(e)(1) and (5).

The Act then provides for Federal District Court review. *Id.* at § 252(e)(6).

*SUBJECT MATTER JURISDICTION*

Rule 12(b)(1) states in relevant part that "the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter." If jurisdiction is not found, then the court shall dismiss the action. *See* Fed.R.Civ.P. 12(h)(3).

■ In cases involving delayed judicial review of final agency actions, the Supreme Court in *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), held that Congress has allocated initial review to an administrative body where such intent is "fairly discernable in a statutory scheme." *Id.* at 206–07, 114 S.Ct. at 776 (citations omitted). "Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether claims can be afforded meaningful review." *Id.*

§ 252 of the Act plainly states that Federal District Courts are to become involved only after the State Commission has reviewed the agreement to determine whether that agreement meets the requirements of §§ 251 and 252. "In any case in which a State Commission makes a determination under this sec-

tion, any party aggrieved by such determination may bring an action in an appropriate Federal District Court to determine whether *the agreement or statement* meets the requirements of section 251 of this title and this section." *Id.* at § 252(e)(6) (emphasis added).

Two recent District Court decisions have interpreted the term "determination" to mean the final agreement, not the several decisions that precede it, as GTE argued in both cases. *GTE v. Morrison,* 957 F.Supp. 800 (E.D.Va.1997); *GTE Southwest Inc. v. Wood,* No. M–97–003 (S.D.Tex. March 13, 1997).

■ GTE again petitions for an expansive definition of the term "determination" contending that "determination" should include every decision made by the PUCO leading up to the final agreement. However, that construction contravenes both the language and the congressional intent of the statute. The Act states that if the parties cannot reach agreement within 135 days, then either party can petition *the PUCO* for binding arbitration on the disputed issues. The PUCO then must resolve the dispute or disputes within nine months after the arbitration request is filed.

If, as GTE contends, they may sue over a disputed issue before the final agreement is reached, then this compressed timetable has no meaning. Given the burdened dockets of the district courts, final agreements could be delayed almost indefinitely while the piecemeal litigation is ongoing. Based on GTE's argument, any disagreement with any decision made by the PUCO would be grounds for litigation.

The compressed timetable set out in the Act does not support this interpretation of the statute. On the contrary, the Act requires such an expedited schedule that Congress' clear intent was to facilitate the opening of the local telephone service markets as quickly as possible. Congress could not have intended, or expected, that one party would be allowed to sue over one or more preliminary decisions, and that those suits be resolved, within the 135 days allotted by the Act.

GTE attempts here precisely the sort of piecemeal litigation that Congress intended to preclude. By providing judicial review only of final State Commission PUCO orders approving or rejecting interconnection agreements, Congress limited incumbents' opportunities to disrupt and delay the expedited agency proceedings.

### CONCLUSION

The tightly restricted timetables prescribed by § 252 remove any conceivable doubt that Congress intended that State commission administrative processes remain unimpeded until an interconnection agreement is completed and approved. In these circumstances, exercising jurisdiction here unquestionably would "disrupt[ ] the review scheme Congress intended." Thunder Basin, 510 U.S. at 206, 114 S.Ct. at 775–76.

Therefore, until an interconnection agreement between GTE and AT & T is approved by the PUCO, GTE's attempts to short-circuit the expedited agency process created by Congress would violate the plain terms of the Act. Accordingly, pursuant to Fed.R.Civ.P. 12(h)(3). Defendants' Motions to Dismiss (Dkt. 6, 20) are hereby **GRANTED.**

**IT IS SO ORDERED.**