**GTE SOUTHWEST INCORPORATED, Plaintiff,**

v.

**Cody L. GRAVES, Bob Anthony, and Ed Apple, in their official capacities as Commissioners of the Oklahoma State Corporation Commission; and AT & T Communications of the Southwest, Inc., Defendants.**

**No. Civ–97–0078–C.**

United States District Court, W.D. Oklahoma.

June 5, 1997.

Thomas J. Kirby, Cody B. Waddell, Gable Gotwals Mock Schwabe Kihle Gaberino, Tulsa, OK, for Plaintiff.

David B. Dykeman, Derryberry Quigley Solomon & Naifeh, Oklahoma City, OK, Rachel Lawrence Mor, Oklahoma Corp. Com'n, Office of Gen. Counsel, Oklahoma City, OK, for Defendnats Cody L. Graves, Bob Anthony.

Jay M. Galt, White Coffey Galt & Fite, Oklah9oma City, OK, for Defendant AT&T Communications of the Southwest Inc.

### ORDER

CAUTHRON, District Judge.

This matter comes before the Court on the motions filed by defendants Cody L. Graves, Bob Anthony, and Ed Apple as Commissioners of the Oklahoma State Corporation Commission (the "Commission" or "OCC"), and AT & T Communications of the Southwest, Inc. ("AT & T Southwest") to dismiss the claims of plaintiff GTE Southwest Incorporated ("GTE Southwest"). As discussed more fully below, the Court has determined that it does not have jurisdiction over this matter pursuant to 47 U.S.C. § 252(e)(6) and 28 U.S.C. § 1331. Therefore, the motion to dismiss of AT & T Southwest is granted pursuant to Fed.R.Civ.P. 12(b)(1). Accordingly, the Court will not address the arguments raised in the motion to dismiss filed by the Commission.

To advance competition in the telecommunications industry, Congress passed comprehensive reforms known as the Telecommunications Act of 1996 (the "Act"). Part of the strategy of the Act is the opening of local telephone markets to competition from outside carriers. The basis of this action, and numerous identical actions across the nation, is the battle resulting from these efforts to transform the monopolistic nature of local telephone service.

In furtherance of its goals, the Act provides that current local providers like GTE Southwest, otherwise referred to in the Act as "incumbent local exchange carriers" ("ILECs"), must resell their telecommunications services at wholesale prices to other carriers seeking entry into their local markets. 47 U.S.C. § 251(a), (b). The Act places a number of substantive demands on the services that an ILEC must provide, but these details are not necessary to a determination of the present motion. However, the process by which ILECs and the encroaching carrier are to arrive at an agreement regarding interconnection with the ILEC's existing system and the rates an ILEC may charge for interconnection services is at the core of AT & T Southwest's motion to dismiss. Title 47 U.S.C. § 252 creates a framework for voluntary and mediated negotiations between the ILEC and the carrier requesting access. When voluntary negotiations break down, either party may petition, in this state, the Oklahoma Corporation Commission to conduct compulsory arbitration and resolve any disputed issues. 47 U.S.C. § 252(b)(1). The Act empowers the OCC to arbitrate the dispute and direct the parties to include in the final agreement the resolution suggested by the OCC. 47 U.S.C. § 252(b), (c).

However, the process identified in section 252(b) and (c) only covers those issues which a party has chosen to bring to the OCC's attention through a petition under section

252(b)(1). After the negotiation or arbitration process has been completed and the parties reach an agreement, the OCC is given broader authority to either approve or reject the agreement in its final form. 47 U.S.C. § 252(e). Congress envisioned not only that state commissions like the OCC would be necessary to facilitate an agreement in the first instance, but also that final review of an agreement would be required to oversee compliance with the substantive provisions in section 251 of the Act.

The present action arises out of attempts by defendant AT & T Southwest to negotiate an interconnection agreement with plaintiff GTE Southwest, the incumbent local exchange carrier. At the risk of gross oversimplification, GTE Southwest's complaint may be characterized as a challenge to an order issued by the OCC on December 13, 1996, contending that order is inconsistent with the Act. AT & T Southwest argues that the complaint was brought prematurely in contravention of the Act's judicial review provisions, and, therefore, this Court lacks subject matter jurisdiction over the action.

■ Federal courts are not courts of general jurisdiction, but possess only that power authorized by the Constitution or by statute. *Kokkonen v. Guardian Life Ins., Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *United States v. Hardage,* 58 F.3d 569, 574 (10th Cir.1995). The Supreme Court in *Thunder Basin v. Reich,* 510 U.S. 200, 207, 114 S.Ct. 771, 776, 127 L.Ed.2d 29 (1994), has clearly defined the test to be followed when there is a question as to the appropriate timing of judicial review of agency actions:

In cases involving delayed judicial review of final agency actions, we shall find that Congress has allocated initial review to an administrative body where such intent "is fairly discernable in the statutory scheme." Whether a statute is intended to preclude initial judicial review is determined from the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review.

(citations omitted). None of the parties presently before the Court dispute that the jurisdiction-conferring statute relevant in this action is 47 U.S.C. § 252(e)(6). In relevant part, that section provides:

In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement ... meets the requirements of section 251 of this title and this section.

■ Defendant AT & T Southwest argues that the statute only confers jurisdiction upon a federal court after an agreement has been approved or rejected by the OCC pursuant to section 252(e)(1). Plaintiff contends the phrase "makes a determination under this section" gives this Court jurisdiction to hear a challenge to almost any ruling by the OCC. More specifically, plaintiff contends that judicial review is available following not only approvals or rejections under section 252(e)(1), but decisions of the OCC settling disputes under the compulsory arbitration provisions in section 252(b). Plaintiff believes that because all of the disputed issues have been addressed by the OCC, this Court now has jurisdiction to review the Commission's findings. The Court finds that plaintiff's arguments are not supported by the language of the statute, nor the overall structure and goals of the Act.

As noted previously, Congress intended to give state authorities, normally a state public utilities commission, the authority to oversee, facilitate and arbitrate the negotiation process between ILECs and carriers seeking interconnection. This state oversight is intended to be consistent with the substantive provisions of section 251 of the federal Telecommunications Act, but the Act clearly intends to give the OCC the first opportunity to resolve all issues. 47 U.S.C. § 252(b)(4)(C), (e)(2). This includes assuring that issues resolved subject to compulsory arbitration are consistent with the Act, 47 U.S.C. § 252(b)(4)(C), (c), and that a final agreement reached either by negotiation or arbitration is consistent with the Act, 47 U.S.C. § 252(e)(2). If the Court were to inject itself into the proceedings after an arbitrable issue has been resolved by the OCC, piecemeal litigation would ensue dis-

rupting the entire scheme created by the Act which unquestionably places primacy on the role of the OCC in the initial stages.

Moreover, such early interference by this Court would interrupt the statutory process in midstream. The OCC is given responsibility to make certain not only that the disputed issues are resolved consistent with the Act, but also that uncontested issues agreed to by the parties are consistent with the Act. 47 U.S.C. § 252(e)(1), (2). Therefore, the Court agrees with the argument of AT & T Southwest that the language of section 252(e)(6) referencing judicial review of an "agreement" means a *final* agreement which has been approved or rejected by the OCC. This result is also consistent with the placement of the judicial review provisions in the statute within the same subsection identifying OCC's responsibility to approve or reject the agreement. 47 U.S.C. § 252(e). The Court also notes that this holding conforms to the rulings of all other district courts addressing the issue. *GTE Florida Inc. v. Johnson*, 964 F.Supp. 333 (N.D.Fla.1997); *GTE North Inc, v. Glazer*, 989 F.Supp. 922 (N.D.Ohio 1997); *GTE South, Inc. v. Breathitt*, 963 F.Supp. 610 (E.D.Ky.1997); *GTE Northwest, Inc. v. Nelson*, 969 F.Supp. 654 (D.Wash.1997); *GTE Southwest, Inc. v. Wood*, No. CA M–97–003 (S.D.Tex. March 27,1997); *GTE Northwest, Inc. v. Hamilton*, No. 97–6021–TC (D.Or. Mar.26 1997); *GTE–South, Inc. v. Morrison*, 957 F.Supp. 800 (E.D.Va.1997).

In the present action, the December 13, 1996, order of the OCC, although entitled "Final Order," is an order ruling upon the recommendations of an arbiter engaged to conduct a section 252(b) arbitration between GTE Southwest and AT & T Southwest. Compl. Ex. 2. The order was not a ruling upon a final agreement submitted by the parties in accordance with section 252(e). The OCC specifically noted in its order that it "expressly retains the right to modify any position taken in this matter, at the time of its review of the complete interconnection agreement entered into between AT & T and GTE." Compl. Ex. 2 at p. 8. The Court finds this language clearly indicates that the OCC did not intend the December 13, 1996, order

to be its final say on whether the agreement between GTE Southwest and AT & T Southwest would be approved or rejected pursuant to section 252(e). Therefore, consistent with the above analysis, the Court holds that the order of the OCC is not reviewable under section 252(e)(6).

The foregoing considered, this Court is without subject matter jurisdiction, and defendant AT & T Southwest's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is granted. Plaintiff's complaint is, therefore, dismissed without prejudice, and the motion to dismiss of the Commissioners of the Oklahoma Corporation Commission is moot.