Jeffrey A. HAYDEN, Plaintiff,

v.

NEW YORK STOCK EXCHANGE, INC., and Regina C. Mysliwiec, Vice President of the New York Stock Exchange's Division of Enforcement, Defendants.

No. 97 CIV. 0081 (JES).

United States District Court, S.D. New York.

June 15, 1998.

---

Sutherland, Asbill & Brennan, L.L.P., New York City (Anthony J. Constantini, Peter J. Anderson, Patricia A. Gorham, Sarah B. Estes, of counsel), for Plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City (Russell E. Brooks, Douglas W. Henkin, of counsel), for Defendants.

1. Plaintiff has voluntarily dismissed all claims against defendant Regina C. Mysliwiec. *See*

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff Jeffrey A. Hayden ("Hayden") brings the instant action for declaratory and injunctive relief against defendants the New York Stock Exchange, Inc. ("NYSE"), and Regina C. Mysliwiec, Vice President of the Enforcement Division of the NYSE.[1] Hayden seeks relief from certain disciplinary proceedings instituted against him by the NYSE, arguing that these proceedings are subject to the five-year statute of limitations imposed by 28 U.S.C. § 2462. Hayden moves for summary judgment pursuant to Fed.R.Civ.P. 56(a); the NYSE cross-moves to dismiss Hayden's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons set forth below, the NYSE's motion to dismiss is granted and Hayden's motion for summary judgment is denied.

## BACKGROUND

From 1977 to the present, Hayden has been employed in the Chattanooga, Tennessee office of Dean Witter Reynolds, Inc. ("Dean Witter"), a member organization of the NYSE. *See* Complaint ("Compl.") ¶ 6. The NYSE is a self-regulatory organization registered pursuant to the Securities and Exchange Act of 1934. *See id.* ¶ 18. Hayden is a registered representative of Dean Witter. *Id.* ¶ 6.

By a "Charge Memorandum" dated November 15, 1996, the NYSE's Division of Enforcement brought disciplinary charges against Hayden pursuant to Exchange Rule 476(a). *Id.* ¶ 7; Exh. A at 29–30. The Charge Memorandum alleges that Hayden "engaged in conduct inconsistent with just and equitable principles of trade" by causing customers to purchase unsuitable investments and by omitting or misrepresenting to his clients pertinent information in connection with their investments. *Id.* The Charge Memorandum further alleges that Hayden caused inaccurate information to be entered on Dean Witter's books and records. *Id.*

Stipulation and Order, dated April 29, 1997.

These allegations relate to Hayden's conduct as early as 1982, fourteen years before the NYSE's initiation of disciplinary proceedings.[2] *Id.* ¶¶ 9, 21.

Hayden filed the Complaint in this action on January 7, 1997. Claiming that the NYSE disciplinary proceeding against him is subject to the five-year statute of limitations imposed by 28 U.S.C. § 2462, Hayden moved for a temporary restraining order against the NYSE and preliminary and permanent injunctive relief. Following oral argument, the Court denied Hayden's motion for a temporary restraining order. *See* Transcript of Oral Argument, dated January 22, 1997, at 11. Thereafter, the NYSE moved to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The Court denied the NYSE's motion without prejudice and also denied plaintiff's motion for a preliminary injunction. *See* Transcript of Oral Argument, dated February 12, 1997, at 40–50. Hayden's counsel having represented at Oral Argument that he would appeal the Court's denial of his motion for a preliminary injunction, the Court ordered that this action be stayed pending a decision by the Court of Appeals. *See* Order, dated February 13, 1997.

Hayden filed a Notice of Appeal from the Court's denial of his motion for a preliminary injunction but then withdrew his appeal from active consideration and requested that the Court lift its prior stay of this action. *See* Order, dated March 31, 1997. Hayden then moved for summary judgment and the NYSE renewed its motion to dismiss.

## DISCUSSION

■ When a party moves to dismiss under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6), a district court should first decide the challenge to the court's subject matter jurisdiction. *See Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Careful adherence to this rule is essential to preserve the prohibition against advisory opinions as a meaningful limitation upon the power of the

federal judiciary. As Justice Scalia has recently stated,

> The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects. For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires.

*Steel Company v. Citizens for a Better Environment,* —— U.S. ——, 118 S.Ct. 1003, 1016, 140 L.Ed.2d 210 (1998)(internal citations omitted).

■ A motion brought pursuant to Rule 12(b)(1) may challenge either the truth of the jurisdictional allegations of the complaint or, alternatively, the legal sufficiency of the allegations to support an exercise of the district court's jurisdiction. In this case, although both Hayden and the NYSE have submitted affidavits and exhibits for consideration by the Court, the Court need not venture beyond the facts alleged in Hayden's complaint to conclude that the complaint must be dismissed.

■ The subject matter jurisdiction of the lower federal courts is determined by Congress " 'in the exact degrees and character which to Congress may seem proper for the public good.' " *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 433, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989) (quoting *Cary v. Curtis,* 44 U.S. (3 How.) 236, 11 L.Ed. 576 (1845)); *see also Patsy v. Board of Regents,* 457 U.S. 496, 501–502, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)("Congress is vested with the power to prescribe the basic procedural scheme under which claims may be heard in federal courts"). Thus, where Congress specifically mandates exhaustion of administrative remedies as a prerequisite for the court's exercise of jurisdiction, the court cannot entertain the controversy until the plaintiff has first exhausted those administra-

---

**2.** The parties have stipulated for purposes of this litigation that "the charges set forth in the Charge Memorandum accrued on or before November 15, 1991." Stipulation and Order, dated

April 18, 1997. The NYSE has further waived any argument that any applicable statute of limitations should be tolled. *See id.*

tive remedies established by Congress. *See Coit Independence Joint Venture v. Federal Sav. and Loan Ins. Corp.*, 489 U.S. 561, 579, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989).

In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994), the Supreme Court held that, where Congress has established a comprehensive scheme for enforcement and administrative review, a court should examine "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review" to determine whether Congress has allocated initial review of a party's claim to the administrative body or to the district court. *See id.* at 207, 114 S.Ct. 771 (internal citations omitted). Where these factors reveal that Congress has clearly allocated initial review to the administrative body, the court is precluded from exercising jurisdiction. *Id.*

This Court finds *Thunder Basin* to be indistinguishable from the case at bar. In *Thunder Basin*, the non-union work force of plaintiff's mine designated two employees of the United Mine Workers of America to serve as miners' representatives under the Federal Mine Safety and Health Amendments Act of 1977 ("Mine Act"). *Id.* at 204. Claiming that the designation compromised its rights under the National Labor Relations Act, the plaintiff mine operator refused to post information about the representatives as required by the applicable agency regulations. *Id.* at 205, 114 S.Ct. 771.

Plaintiff then filed suit in the district court and obtained an injunction against agency enforcement of these regulations. *Id.* The Supreme Court held that the comprehensive statutory review scheme imposed by the Mine Act precluded the district court from exercising jurisdiction. Under the Mine Act, all challenges to enforcement measures by the responsible agency, the Mine Safety and Health Administration, are initially reviewed by the Federal Mine Safety and Health Review Commission and then by the appropriate court of appeals. *Id.* at 204, 114 S.Ct. 771. Because Congress, when creating this comprehensive enforcement structure, allocated no role to the district court with respect to suits by mine operators, the Supreme Court held that the district court lacked subject matter jurisdiction. *Id.* at 208–209, 114 S.Ct. 771.

■ Similarly, in the instant action, this Court is constrained to. conclude that the Securities Exchange Act of 1934 precludes this Court from exercising jurisdiction over Hayden's challenge to the NYSE disciplinary proceeding brought against him.[3] By enacting the Exchange Act and the subsequent amendments thereto, Congress created a detailed and comprehensive structure for SRO enforcement actions and the administrative and judicial review of such enforcement actions. The SROs are charged with ensuring their members' compliance with both the Exchange Act and the SROs' own rules and professional standards. Indeed, section 6(b) of the Exchange Act requires that the rules of any SRO must provide that member firms and their associated persons will be disciplined by the SRO for violations of the Exchange Act or the rules of the SRO. *See* 15 U.S.C. § 78f(b). Section 6(b) further provides that the SRO may discipline any offending member or associated person by ex-

---

**3.** By arguing that the exhaustion requirement at issue in the instant action is a matter of judicial discretion, Hayden ignores the important distinction between those cases in which Congress has by statute precluded the district courts from exercising jurisdiction and those cases in which the courts decline jurisdiction under the judge-made doctrine of exhaustion. Unlike a statutory requirement of exhaustion, the judge-made doctrine of exhaustion is a flexible rule of judicial administration created by the courts "as a means of integrating agencies into the legal system in a manner that respects their unique institutional advantages and statutory responsibilities." K. Davis and R. Pierce, *Administrative Law Treatise*, 3d ed. § 15.3 (1994).

In the instant case, Congress has already provided a clear answer to the question of how the SROs and the SEC should be integrated into the legal system. *See Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 56 (2d Cir.1996). Thus, the discretionary balancing called for by the exhaustion doctrine is in the instant case both unnecessary and inappropriate. *See Thunder Basin*, 510 U.S. at 218 n. 23, 114 S.Ct. 771; *see also McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (distinguishing cases in which Congress has expressly mandated exhaustion from cases in which "sound judicial discretion governs").

pulsion, suspension, limitation of activities, fine, censure, "or any other fitting sanction." *See id.* § 78f(b)(6). Moreover, any disciplinary action taken by the SRO must conform with certain procedural protections imposed by § 6(d), including adequate notice of the charges and an opportunity for the accused to defend against the charges. *Id.* § 78f(d).

Upon imposition of final disciplinary action, the SRO must provide the Securities and Exchange Commission ("SEC") with a written notice providing the relevant factual background and the issues involved in the exchange disciplinary proceeding. *Id.* § 78s(d)(1). Upon motion of the disciplined party or the SEC, the disciplinary action of the SRO is subject to SEC review. *Id.* § 78s(d)(2). Finally, § 25(a) allows a party aggrieved by a final order of the SEC to obtain judicial review of the SEC order in the court of appeals for the circuit in which he resides or the District of Columbia Circuit. *Id.* § 78y(a). Furthermore, the Exchange Act provides that "[t]he findings of the [SEC] as to the facts, if supported by substantial evidence, are conclusive," and that the court of appeals may consider "no objection ... unless it was urged before the [SEC] or there was reasonable ground for failure to do so." *Id.* §§ 78y(a)(4), 78y(c)(1).

The Court finds especially significant Congress's failure to assign any role to the district courts in this detailed and comprehensive scheme created for the discipline of exchange members and associated persons. Indeed, the exercise of jurisdiction by a district court in this case would seriously undermine Congress's manifest intent that issues not raised before the SEC should not be subject to judicial review. It follows that since Congress has exercised such care in crafting this procedural structure, Congress's failure to assign any role to the district courts strongly suggests that Congress intended the statutory review procedure to be exclusive.[4]

Indeed, any other conclusion would subvert the Congressional purpose of creating a partnership between government and private enterprise as the cornerstone for regulation of the nation's securities markets. *See Silver v. New York Stock Exchange*, 373 U.S. 341, 366, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963). A significant part of that plan is Congress's commitment to preserving the role of the national exchanges in the discipline of their members. *See, e.g.,* S.Rep. No. 792, 73d Cong., 2d Sess. 12–13 (1934); H.R.Rep. No. 1383, 73d Cong., 2d Sess. 15 (1934); S.Rep. No. 75, 94th Cong., 1st Sess. 23 (1975). Hayden's attempt to enjoin the NYSE disciplinary proceeding against him strikes at the core of this partnership by depriving the NYSE of the opportunity to conduct its own hearings and render its own determination in this matter.[5]

It was also clearly the intent of Congress that initial review of SRO disciplinary proceedings be undertaken by an agency with expertise in the regulated industry—the SEC. Congress's concern that the review of SRO proceedings be informed by expert knowledge of the securities industry is reflected in the Exchange Act's limitations upon the scope of judicial review of SEC

4. Section 25(a) also directs an aggrieved party to seek judicial review before the court of appeals for the circuit in which he resides or the District of Columbia Circuit. *See* 15 U.S.C. § 78y(a). As Hayden resides in Tennessee, *see* Compl. ¶ 6, his appeal belongs before the Court of Appeals for the District of Columbia Circuit or the Sixth Circuit, not the Second Circuit. Thus, Hayden seeks not only to obtain premature judicial review but also to have his case decided by a circuit court that otherwise could not hear his case.

5. Hayden claims that the NYSE will not be unduly burdened because in this case the parties have resolved by stipulation all contested issues of fact, thus eliminating the need for discovery and trial of this action. *See* Stipulation and Order, dated April 18, 1997. However, reliance by this Court upon the parties' stipulation as the basis for granting an injunction against the NYSE would itself frustrate the NYSE's execution of its investigatory responsibilities under the Exchange Act. In fact, in this case, the NYSE was induced to enter into this stipulation to escape the burden and delay of discovery in federal court. *See id.* (reciting that defendants stipulated to the facts in dispute because "discovery would intrude upon and burden the ongoing disciplinary proceeding against Hayden."). It would be a perverse rule that predicated this Court's subject matter jurisdiction upon an SRO's willingness to stipulate to the facts at issue, especially since the burden of federal court litigation that never should have been imposed in the first place might well cause a party to sign such a stipulation.

orders. By requiring judicial deference to the factual findings of the SEC and limiting judicial consideration of issues not previously raised before the SEC, *see* 15 U.S.C. §§ 78y(a)(4), 78y(c)(1), Congress curtailed the power of the judiciary to interfere with the efficient regulation of an industry by those best equipped for the task.

*Thunder Basin* also requires that this Court consider whether Hayden's particular claim will be afforded meaningful judicial review under the statutory structure created by Congress. *See Thunder Basin*, 510 U.S. at 212, 114 S.Ct. 771. Where the statutory procedures afford an aggrieved party no meaningful opportunity to secure relief for the injury he alleges, this Court will not readily attribute to Congress the intent to preclude any judicial remedy. *See Barbara*, 99 F.3d at 57.[6]

Here, however, it is not disputed that Hayden will have the opportunity for both administrative and judicial review of his claim that the NYSE's disciplinary proceeding against him is barred by § 2462. As discussed above, § 25(a) of the Exchange Act expressly provides for review of Hayden's disciplinary proceeding by both the SEC and the appropriate court of appeals. *See* 15 U.S.C. § 78y(a). The Court rejects Hayden's argument that this administrative and judicial review will not afford him a meaningful remedy for an erroneous decision by the NYSE because he may, pending review by the SEC and the court of appeals, be suspended from employment in the securities industry, during which time his position in the industry may be irreparably damaged. *See* Compl. ¶ 30. The Court likewise rejects Hayden's argument that he will be injured by the cloud that the disciplinary proceedings place over his professional reputation. *See id.* at ¶ 26.

Neither of these claims is sufficient to demonstrate that the judicial review available under § 25(a) of the Exchange Act is meaningless. Any disciplinary action by the NYSE may be stayed pending SEC review, and any adverse decision by the SEC may be stayed pending Hayden's appeal to the ap-

propriate court of appeals. *See* 15 U.S.C. § 78s(d)(2); 15 U.S.C. § 78y(c)(2). Moreover, Hayden offers no basis for this Court to conclude that the SEC or the court of appeals will deny a meritorious application for a stay of any sanctions against him.

In any event, any injury arising from the adverse publicity that NYSE disciplinary proceedings create or from the delay and cost of litigation are legally insufficient to establish irreparable harm. *See Miss America Organization v. Mattel, Inc.*, 945 F.2d 536, 545 (2d Cir.1991) (citing *Petroleum Exploration v. Public Service Comm'n*, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294 (1938); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). Indeed, the injuries alleged by Hayden will be suffered by almost any registered representative who becomes the subject of a disciplinary proceeding. Therefore, they surely do not suffice to demonstrate that the scheme of review set forth in the statute is meaningless.

In short, the Exchange Act's text, structure, and legislative history reveal a clear Congressional intent to preclude district court review of SRO disciplinary proceedings. Because this Court concludes that Hayden's case presents precisely the sort of claim Congress intended to subject to the comprehensive enforcement structure created by the Exchange Act, this Court must dismiss Hayden's complaint for lack of subject matter jurisdiction.

### CONCLUSION

For the reasons stated above, the NYSE's motion to dismiss is granted and Hayden's motion for summary judgment is denied. The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED**

---

**6.** Of course, absent any claim by Hayden of a deprivation of due process, this Court cannot disregard the limits that Congress has imposed upon our jurisdiction, no matter how compelling Hayden's claims of injury. Hayden makes no due process claim, presumably because such a claim would be patently frivolous in light of the extensive procedural protections afforded Hayden under the Exchange Act. *See* discussion *supra* at 338–39.