KAVANAUGH, Circuit Judge,
dissenting in part:[1]
Plaintiffs filed suit in federal district court to challenge IRS Notice 2006-50 and to obtain tax refunds larger than those permitted by the Notice. But plaintiffs did not first file refund claims with the IRS. They therefore failed to comply with the statutory exhaustion requirement of 26 U.S.C. § 7422(a), which bars taxpayers from bringing suits for “recovery” of taxes paid “until a claim for refund or credit has been duly filed with the Secretary.”
On appeal, plaintiffs creatively seek to end-run the exhaustion requirement by arguing that they are no longer seeking money — at least in this case — but instead are pursuing only a pure Administrative Procedure Act challenge to Notice 2006-50. But as I see it, plaintiffs still face two insurmountable hurdles that preclude the federal courts from entertaining their suit at this time. First, plaintiffs’ APA claims *95 seek a judicial declaration that Notice 2006-50 does not provide them sufficient tax refunds and that the Notice is procedurally invalid. But § 2201(a) of title 28 bars courts from entertaining a claim for declaratory relief “with respect to Federal taxes.” Second, and in the alternative, the ripeness doctrine precludes pre-enforcement APA challenges to IRS rules of this kind.
As a result of either § 2201(a) or the ripeness doctrine, plaintiffs must raise their arguments about Notice 2006-50 in a refund suit, as authorized by § 7422(a) and 28 U.S.C. § 1346. And they may file such a refund case only after complying with the exhaustion requirements of § 7422(a), which they have not done.
It is long established that a refund suit — after exhaustion of administrative remedies — is the proper forum to raise claims about tax laws and regulations. It therefore comes as no surprise that the majority opinion can cite no case that has permitted a pre-enforcement APA challenge to a tax regulation of this kind. Because we should not entertain this suit at this time, I respectfully dissent.
A
In Notice 2006-50, the IRS announced that it would refund excise taxes paid by millions of Americans for long-distance telephone calls billed between February 28, 2003, and August 1, 2006. The Notice informed taxpayers that they could claim refunds on their tax returns for 2006. Those who wanted to claim a standard amount — ranging from $30 to $60 depending on the number of exemptions claimed on Form 1040 — could simply cheek a box on their returns. Those who wished to claim a greater amount could file a Form 8913 with their returns. And those who would not otherwise file a tax return for 2006 could file a newly created Form 1040EZ-T for the standard amount or claim a greater amount by also completing a Form 8913.
Approximately 90 million Americans followed those simple instructions and promptly received their refunds.
But the plaintiffs involved in this case did not properly seek refunds from the IRS pursuant to those authorized procedures. Instead, they filed suit in federal court and attempted to style the case as a class action on behalf of tens of millions of Americans who paid the improper telephone excise taxes. Plaintiffs’ complaint primarily argued that the refunds authorized by Notice 2006-50 would not fully compensate taxpayers for the telephone excise taxes that had been improperly collected. The complaint alleged, in particular, that taxpayers are entitled to refunds for service taxed before February 28, 2003 — not just from February 28, 2003, to August 1, 2006. The complaint also contended that Notice 2006-50 requires excessive documentation in order to claim an amount above the standard amount — another way of saying that Notice 2006-50 undercompensates many taxpayers for the actual excise taxes paid. The complaint further claimed that Notice 2006-50 was procedurally flawed because the IRS promulgated it without notice and comment. The complaint expressly asked the district court to order additional tax refunds to tens of millions of Americans.
It would have been easy enough for the individual named plaintiffs to first seek refunds from the IRS. And then, if they were denied refunds or did not receive a response within the statutory six-month period under 26 U.S.C. § 6532(a), they could have brought suits challenging the amounts they received or the procedures by which the IRS determined those amounts. For whatever reason, presum *96 ably strategic considerations related to their efforts to obtain class certification and significant elasswide monetary relief, plaintiffs did not do so.
B
Plaintiffs’ failure to exhaust their available remedies with the IRS precludes them from proceeding in federal court at this time.
In the district court, to the extent plaintiffs were seeking money refunds, they ran smack into the exhaustion requirement of § 7422(a). That statute bars federal courts from entertaining suits for recovery of federal taxes unless and until the taxpayers first seek refunds from the IRS.
On appeal, no doubt recognizing the § 7422(a) exhaustion problem with their refund claims, plaintiffs have simply dropped those arguments and now pursue only a freestanding Administrative Procedure Act challenge to Notice 2006-50. The majority opinion allows those APA claims to proceed.[2] Although I respect the majority opinion’s analysis, I disagree with allowing this case to go forward at this time, for two alternative reasons.
First, plaintiffs’ suit — even as stripped down on appeal — still runs headlong into the phalanx of statutory provisions mandating that challenges to tax laws, regulations, decisions, or actions ordinarily be brought in refund suits after plaintiffs have sought a refund from, and exhausted their administrative remedies with, the IRS. See 26 U.S.C. § 7422(a) (exhaustion requirement); id. § 7421(a) (Anti-Injunction Act); 28 U.S.C. § 2201(a) (tax exception to courts’ power to grant declaratory relief); see also 5 U.S.C. § 702 (preserving-other limitations on judicial review in APA cases). Those statutory provisions help ensure the efficient administration of the tax system by funneling challenges to the tax laws into one refund procedure and by precluding premature judicial review of disputes involving taxes owed or paid. See Bob Jones Univ. v. Simon, 416 U.S. 725, 746-47, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974).
Of particular relevance here is § 2201(a) of title 28. With their APA claims, plaintiffs seek a judicial declaration that Notice 2006-50 is arbitrary and capricious because it undercompensates them and was adopted in a procedurally improper manner. See J.A. 340-42 (Sloan complaint) (asking for “declaratory relief” and “a declaratory judgment” and that the court “declare” rights); J.A. 348 (Gurrola complaint) (seeking “declaratory relief’).[3]
But by enacting § 2201(a) back in 1935, Congress generally barred suits for declaratory relief in cases “with respect to Federal taxes.” The text of § 2201(a) squarely precludes this APA suit at this time. It means that plaintiffs must raise their arguments about Notice 2006-50 in a refund *97 suit, as authorized by § 7422, after first seeking refunds from the IRS.[4]
The majority opinion concludes that § 2201(a) does not apply here because this Court has said that § 2201(a) and the Anti-Injunction Act are “coterminous.” Maj. Op. at 5 (citing Inv. Annuity, Inc. v. Blumenthal, 609 F.2d 1, 4 (D.C.Cir.1979)). By their terms, of course, the statutes are not coterminous: § 2201(a) bars declaratory relief “with respect to Federal taxes,” and the Anti-Injunction Act precludes injunctive relief “restraining the assessment or collection of any tax.” Despite the statutes’ different language, the majority opinion is correct that our cases have said the two statutes are “coterminous.”
But coterminous in what direction: (i) coterminously narrow such that the statutes bar declaratory and injunctive relief restraining the assessment or collection of taxes or (ii) coterminously broad such that the statutes bar declaratory and injunctive relief with respect to federal taxes?
In one recent decision, we indicated that the Anti-Injunction Act and § 2201(a) should be read to be coterminous and broad, barring all declaratory and injunctive relief with respect to Federal taxes. See Murphy v. IRS, 493 F.3d 170, 174 (D.C.Cir.2007). In Murphy, citing both § 2201(a) and the Anti-Injunction Act, we said that “Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to all tax controversies except those pertaining to the classification of organizations under § 501(c)” of the Internal Revenue Code. Id. (emphasis added).
The Murphy statement is consistent, moreover, with the oft-articulated general principle that “the tax field is marked by the general preclusion of advance declaratory or injunctive relief.... For most tax issues and most taxpayers, a subsequent action for refund adequately safeguards all appropriate concerns.” Inv. Annuity, Inc. v. Blumenthal, 609 F.2d 1, 9 (D.C.Cir.1979). The Murphy statement also corresponds to the case law elsewhere: “Given the breadth of [§ 2201(a)], conclusions by many lower courts that I.R.C. § 7421 and [§ 2201(a)] should be interpreted in pari materia seem to derive at least partly from the courts’ broad inteipretation of I.R.C. § 7421.” Kristin E. Hickman, A Problem of Remedy: Responding to Treasury’s (Lack of) Compliance with the Administrative Procedure Act Rulemaking Requirements, 76 Geo. Wash. L. Rev. 1153, 1212 (2008).
In short, reading the two statutes to coterminously bar declaratory and injunctive relief with respect to federal taxes is consistent with precedent, adheres to the plain text of the later-enacted 26 U.S.C. § 2201(a), and corresponds to the well-established principle that challenges to tax regulations should be brought in refund suits. Therefore, to the extent we must read the two statutes coterminously (and as a panel we must, see infra n. 6), I would read them to bar free-standing suits seeking declaratory and injunctive relief with respect to federal taxes.
The majority opinion disagrees and cites four of our cases in concluding that the Anti-Injunction Act and § 2201(a) must be interpreted conterminously but narrowly — thereby allowing the federal courts to entertain plaintiffs’ freestanding challenge to Notice 2006-50 before they have ex *98 hausted their administrative remedies with the IRS. Upon examination, however, none of the cited cases actually supports that result.
Our decision in E. Ky. Welfare Rights Org. v. Simon, 506 F.2d 1278, 1285 n. 11 (D.C.Cir.1974), is not binding precedent because it was vacated by the Supreme Court on standing grounds, meaning the federal courts had no jurisdiction to hear the case. See Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37, 46, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). As the Supreme Court has explained, a decision “vacating the judgment of the Court of Appeals deprives that court’s opinion of precedential effect.” County of Los Angeles v. Davis, 440 U.S. 625, 634 n. 6, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (internal quotation marks omitted).
So, too, our pre-Eastern Kentucky decision in “Americans United” Inc. v. Walters, 477 F.2d 1169, 1175-76 (D.C.Cir.1973), was reversed by the Supreme Court on other grounds — namely, that the Anti-Injunction Act by its own terms jurisdictionally barred the suit. See Alexander v. “Americans United” Inc., 416 U.S. 752, 758-59 & n. 10, 94 S.Ct. 2053, 40 L.Ed.2d 518 (1974). A judicial opinion lacks precedential force if it is not connected to a judgment. Therefore, prior panel decisions that were reversed by the Supreme Court — like those that were vacated — are not binding precedent. See Charles A. Sullivan, On Vacation, 43 Hous. L. Rev. 1143, 1149 (2006) (“it is not clear why any opinion survives the extinction of the judgment it supports (whether that extinction is by vacatur or reversal), but, if some opinions do survive, it seems strange that the distinction is drawn between judgments which are vacated and those that are reversed”); Jon O. Newman, Decretal Language: Last Words of an Appellate Opinion, 70 Brook. L. Rev. 727, 728 (2005) (noting “difference of opinion among judges as to the circumstances in which ‘vacated’ or ‘reversed’ should be used in decretal language”).[5]
Finally, the majority opinion cites two later cases that purportedly “re-embraced” the rationale of Americans United and Eastern Kentucky. Maj. Op. at 12-13 n. 3 (citing Nat’l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1436-37 (D.C.Cir.1995) and Inv. Annuity, 609 F.2d at 4, 10). But National Taxpayers Union and Investment Annuity merely reiterated that the statutes were coterminous in the course of concluding that the suits in question were barred by the narrow terms of the Anti-Injunction Act. Neither case therefore had occasion to pass on the key question here: whether the statutes are (i) coterminously narrow and bar declaratory and injunctive relief restraining the assessment or collection of taxes or (ii) coterminously broad and bar declaratory and injunctive relief with respect to federal taxes.[6]
*99 In sum, I respectfully disagree with the majority opinion’s decision to aggressively interpret National Taxpayers Union and Investment Annuity and thereby allow this case to go forward at this time. In my judgment, none of our precedents compels or permits us to disregard the very plain statutory text of § 2201(a). And pursuant to that text, courts may not entertain this kind of free-standing suit for declaratory relief “with respect to Federal taxes.” 26 U.S.C. § 2201(a). A refund suit — after exhaustion — is the proper vehicle for plaintiffs to challenge Notice 2006-50. On that basis alone, we should dismiss plaintiffs’ suit.
Second, even if § 2201(a) does not bar the APA claims, the ripeness doctrine does so. The Supreme Court’s decision in Abbott Laboratories v. Gardner permits many pre-enforcement challenges to agency rules — and those disputes are, of course, a staple of this Court’s diet. 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). But Abbott Laboratories by no means opens the door to every pre-enforcement challenge to an agency rule. Rather, the ripeness inquiry examines the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. See id. at 148-49, 87 S.Ct. 1507. Under the hardship prong of that test, a plaintiff ordinarily may not bring a pre-enforcement challenge to a rule that does not “as a practical matter require[ ] the plaintiff to adjust his conduct immediately.” Nat’l Park Hospitality Ass’n v. Dep’t of the Interior, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003) (internal quotation marks omitted); see also Ohio Forestry Ass’n v. Sierra Club, 523 U.S. 726, 733-35, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998); Lujan v. Nat’l Wildlife Fed’n, 497 U.S. 871, 891,110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, pre-enforcement review typically is more appropriate for regulations imposing burdens than for those (like Notice 2006-50) offering benefits or establishing criteria for benefits. See Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57-59, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993); 2 Richard J. Pierce, Jr. Administrative Law Treatise § 15.14, at 1078-79 (4th ed.2002). In other words, plaintiffs in such cases must ordinarily apply for benefits (here, for additional tax refunds) before launching a lawsuit against the agency regulation that sets forth the criteria for the benefits.[7]
Under the governing precedents, plaintiffs’ APA challenge to IRS Notice 2006-50 is not ripe. Plaintiffs must file a refund request and first give the IRS a chance to assess the merits of their arguments for additional refunds. After that step, plaintiffs may file a refund suit and complain in court about the Notice. See Stephenson v. Brady, 927 F.2d 596, 1991 WL 22835, at *3-4 (4th Cir.1991).
*100 The majority opinion says the ripeness doctrine does not apply because this is a post-enforcement suit. That explanation is mystifying. Until plaintiffs seek a larger refund from the IRS and are denied, Notice 2006-50 will not have been enforced against them by the IRS. So this lawsuit is a pre-enforcement suit targeting Notice 2006-50. And the ripeness doctrine, in my judgment, precludes hearing this pre-enforcement case at this time.
C
Both § 2201(a)’s bar on declaratory relief “with respect to Federal taxes” and the ripeness doctrine exemplify the broad theme that runs throughout administrative law in the tax area. As noted above, we have stated, for example, that “the tax field is marked by the general preclusion of advance declaratory or injunctive relief. ... For most tax issues and most taxpayers, a subsequent action for refund adequately safeguards all appropriate concerns.” Inv. Annuity, Inc. v. Blumenthal, 609 F.2d 1, 9 (D.C.Cir.1979). We also have flatly stated that “Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to all tax controversies except those pertaining to the classification of organizations under § 501(c)” of the Internal Revenue Code. Murphy v. IRS, 493 F.3d 170, 174 (D.C.Cir.2007).
So, too, the leading academic on this issue has explained that the precedents applying § 7421(a), § 7422(a), § 2201(a), and the ripeness doctrine stand “almost unyieldingly against pre-enforcement challenges to Treasury’s regulations promulgated in violation of APA procedural requirements.” Kristin E. Hickman, A Problem of Remedy: Responding to Treasury’s (Lack of) Compliance with the Administrative Procedure Act Rulemaking Requirements, 76 GEO. WASH. L. REV. 1153, 1200 (2008). It is true that Professor Hickman argues for changing the state of the law, but she acknowledges frankly that it “is perhaps quixotic to suggest that the courts rethink doctrine firmly rooted in forty years of jurisprudence.” Id. at 1201.
In charting a new course in this case, the majority opinion refers to the IRS’s position in the events surrounding this case as “adamant,” “aggressive,” “creative,” “inventive,” “remarkable,” “mean,” and exhibiting “chutzpah” — and the majority opinion then proclaims that “[n]o agency operates beyond the reach of the law.” Maj. Op. at 14. I of course agree wholeheartedly with the sentiment that the IRS must comply with the law. But that sentiment, as I see it, is a red herring in this case. The question here concerns only the timing of judicial review, not the availability of judicial review.
With respect to the actual issue presented — namely, the timing of judicial review — it is telling that the majority opinion and plaintiffs cite no decision that has entertained an APA challenge to an IRS rule relating to taxes outside the context of a refund suit. The lack of support in the Federal Reporters for entertaining a freestanding, pre-enforcement APA challenge to a tax regulation counsels judicial caution and restraint — and helps demonstrate, in my judgment, the novelty and error of the majority opinion’s approach.
The majority opinion claims that the lack of case law permitting challenges to tax regulations except in refund suits actually is of no moment because, it says, there are not many opinions expressly rejecting this precise kind of free-standing APA challenge. But we could line Constitution Avenue from this Courthouse to the IRS Building with judicial decisions that apply § 2201(a), the Anti-Injunction Act, the statutory exhaustion principle, and the *101 ripeness doctrine and hold that challenges to tax laws and regulations must occur in refund suits. Those many decisions, in my judgment, establish a principle of judicial restraint that plainly covers this suit.
In sum, plaintiffs’ APA claims are barred from review at this time by 28 U.S.C. § 2201(a), or in the alternative, by the ripeness doctrine. I respectfully dissent from the majority opinion’s contrary conclusion.

. This case involves three consolidated suits. I agree with the majority's decision to dismiss the Cohen plaintiffs' suit for the reasons well explained in its opinion. I respectfully disagree with the majority's decision to allow the suit by the Sloan and Ginrola plaintiffs to go forward. References to ''plaintiffs” in this dissenting opinion are to the Sloan and Gurrola plaintiffs.

. On remand, to the extent plaintiffs ultimately prevail on their argument that Notice 2006-50 was improperly promulgated without notice and comment, the IRS can simply re-promulgate it after notice and comment and, under 26 U.S.C. § 7805(b)(4), make it retroactive to the date of the original Notice.

. Because the APA preserves the limitations on judicial review in other statutes such as § 2201(a), plaintiffs may not use the APA to avoid the limitations of § 2201(a). See, e.g., Taylor v. United States, 292 Fed.Appx. 383, 388-89 (5üi Cir.2008) (per curiam) (“as both the Anti-Injunction Act and the Declaratory Judgment Act bar the equitable relief sought by the Taylors, they cannot avail themselves of the APA's waiver of sovereign immunity to seek that relief in the district court”); Fostvedtv. United States, 978 F.2d 1201, 1203-04 (10th Cir. 1992) (" § 702 of the APA does not override the limitations of the Anti-Injunction Act and the Declaratory' Judgment Act”).

. Section 2201(a) would not bar plaintiffs' suit if they had no other legal avenue available to obtain relief. See South Carolina v. Regan, 465 U.S. 367, 378-79, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984). But here, of course, those who wanted to challenge Notice 2006-50 could have brought a refund suit and raised their concerns there.

. To be sure, after a reversal or vacatur by the Supreme Court, a panel may then have to decide the case on remand by addressing issues that were not considered by the Supreme Court. And the panel's post-remand decision and accompanying ratio decidendi may of course become binding precedent. But a pri- or panel decision that was vacated or reversed by the Supreme Court has no more weight than dicta. It can be analyzed and cited for its persuasive value, but it is not binding.

. This whole effort in assessing the "coterminous in what direction" question is admittedly a rather odd exercise. I say that because, contrary to what our 1970s-era cases said, the texts of the Anti-Injunction Act and § 2201(a) are of course not coterminous. And courts today likely would not find them coterminous because courts today tend to pay greater attention to statutory text. So at some point, the en banc Court should clear this up and ensure that our case law aligns with the text of the two statutes, as Professor Bittker advo *99 cated years ago. See Boris I. Bittker & Kenneth M. Kaufman, Taxes and Civil Rights: “Constitutionalizing” the Internal Revenue Code, 82 YALE L.J. 51, 58 (1972) (“reducing the Declaratory Judgment Act to a mere echo of § 7421(a) ... deprives it of any independent significance ... and the fact that Congress amended the Declaratory Judgment Act in 1935 to exclude controversies ‘with respect to Federal taxes’ argues for giving the amendment some independent significance”); cf. Bob Jones Univ., 416 U.S. at 732 n. 7, 94 S.Ct. 2038.

. Courts have also been more reluctant to find a specific pre-enforcement challenge ripe where (as here) a statute (26 U.S.C. §§ 1346, 7422) creates a separate process for review. See, e.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-209, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994). That body of case law also counsels against premature adjudication of plaintiffs’ claims.